BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1907.

---

## B. C. HEDDEN, Respondent, v. GEORGE S. SCHNEB-LIN, Appellant.

### Kansas City Court of Appeals, October 7, 1907.

1. **FRAUDS AND PERJURIES: Another's Debt: Debtor and Creditor: Performance.** The provision of the Statute of Frauds relating to the promise to pay the debt of another applies only to promises made to the creditor and not to those made to the debtor or someone standing in his shoes, such as a purchaser of encumbered property, as in this case; and the complete performance by one party forecloses the interposition of the Statute of Frauds as a defense against him.

2. ———: ———: ———: ———: **Consideration.** Where the promise to pay the debt of another is incorporated into the contract of sale as an essential part thereof, the consideration for the sale is the ailment for the promise to pay the encumbrance on the property sold, and makes it binding.

3. **DAMAGES: Measure of: Contract: Loaning Money.** Only natural and proximate damages are allowable for the breach of the contract, and generally the measure of damages for failure to make a loan of money as agreed, is the difference between the interest and the contract rate and the rate in the open market.

4. ———: ———: ———: ———: Whenever a direct causal relation is disclosed between the wrongful act and an injurious result, then such result must be deemed to have been within the contemplation of the parties at the time they entered into the contract, and the delinquent party should be held in damages for the special injury thus inflicted, and under the contract *sub*

( 478 )

*judice,* the rule for nominal damages is not applicable but would be unjust.

5. **CONTRACT: Breach of: Evidence: Verdict.** Evidence relating to the breach of a contract is held sufficient to support the verdict for substantial damages.

Appeal from Vernon Circuit Court.—*Hon. Levin W. Shafer,* Judge.

AFFIRMED.

*M. T. January* for appellant.

(1) The court erred in refusing a new trial, for the reason the verdict is against the evidence and the weight of the evidence. (2) The agreement by the administrator to pay the debt of his intestate was within the fourth section of the Statute of Frauds and could only be proved by writing. Walther v. Merrill, 6 Mo. App. 370; Bambrick v. Bambrick, 157 Mo. 423; Nunn v. Carroll, 83 Mo. App. 135. (3) Nominal damages only are recoverable for breach of contract to loan money. Lowe v. Turpin, 37 L. R. A. 233 and notes; 1 Sutherland on Damages (1 Ed.), 128; Fontaine v. Lumber Co., 109 Mo. 55; Dill v. Crum, 39 Mo. App. 508. (4) When a contract is broken, it is the duty of the party not at fault to use reasonable efforts to minimize his damages. 1 Sutherland on Damages (1 Ed.), page 148; Fisher v. Goebel, 40 Mo. 475.

*Scott & Bowker* for respondent.

(1) Where a promise to pay a debt of another is a mere incident to the main purpose and is made in consideration of a benefit accruing to the promisor it is not within the Statute of Frauds. Winn v. Hillyer, 43 Mo. App. 139; Hale v. Stewart, 76 Mo. 20. (2) A promise made to a debtor to pay the debt of another is not within the Statute of Frauds. Such promise to pay the debt of another to be within the statute must be made to the

creditor. Howard v. Coshow, 33 Mo. 118; Brown v. Brown, 47 Mo. 130; Brown v. Express Co., 47 Mo. 237; Green v. Estes, 82 Mo. 337; Besshears v. Rowe, 46 Mo. 501; Winn v. Hillyer, 43 Mo. App. 139.    (3) Where a contract has been wholly performed on one side, the other party cannot interpose the defense of the Statute of Frauds to defeat his promise. Chenoweth v. Express Co., 93 Mo. App. 185; Mitchell v. Branham, 104 Mo. App. 480; Maupin v. Railway, 171 Mo. 187; Bless v. Jenkins, 129 Mo. 647; Suggett v. Cason, 26 Mo. 221.    (4) The measure of damages in this case for the breach of the contract sued on, was the difference between the mortgage upon the property and the actual value thereof. Real Estate Syndicate v. Symns, 179 Mo. 679; Pettitt v. Carpenter, 86 Mo. App. 452; Gallup v. Miller, 25 Hun (N. Y.) 298; 1 Sutherland on Damages, 128-9; Banewur v. Levinson, 50 N. E. 10; Doushkess v. Brewing Co., 47 N. Y. S. 312, 20 App. Div. 375; Cole v. Stevens, 162 N. Y. 637; Atherton v. Williams, 19 Ind. 105. (5)    The effort to limit damages by the party injured is to be determined by the rules of common sense and fair dealing, and where the party whose duty it is primarily to perform a contract has equal opportunity for performance, and equal knowledge of the consequences of non-performance, he cannot, while the contract is subsisting and in force, be heard to say that the plaintiff might have performed for him.    8 Am. and Eng. Ency. Law p. 606; 1 Sutherland on Damages, pp. 150, 151.    (6) The burden of proof to show that the party injured did not make proper efforts to avoid the injurious consequences of the act of the other party, is upon the latter.    8 Am. and Eng. Ency. Law, p. 607.

JOHNSON, J.—Action for damages resulting from breach of contract. It appears from the allegations of the petition and from the evidence introduced by plaintiff that plaintiff and one Doubet began negotiations for

the purchase by the former of a dairy stock consisting of cattle, horses, wagons and fixtures and were progressing with them when Doubet, the owner of the stock, died, on the third day of March, 1905, leaving his widow sole heir to his property. A few days after his death, defendant Schneblin, brother-in-law to the widow, qualified as administrator of the estate and the negotiations for the purchase of the dairy were resumed by plaintiff with him. The property was encumbered by a chattel mortgage to secure two sureties who had endorsed Doubet's note to a bank for $988. Plaintiff and defendant agreed on a sale at the sum of $1,800, but plaintiff was able to pay only $812 of the purchase price and, in order to effect the sale, defendant agreed to lend him the remainder of $988, for one year and to make the loan in time for the proceeds to be used in paying off the debt of the estate to the bank, which would become due in about one month. The sale was closed on this agreement and plaintiff paid to defendant $812 and took possession of the property. When the bank note matured, defendant failed to advance the money necessary to pay it and later refused to make the loan on the terms agreed. Plaintiff then attempted to borrow the money elsewhere but was unsuccessful and again applied to defendant for the loan. After much negotiation, defendant agreed to make the loan for six months, provided plaintiff would secure him by chattel mortgage covering the dairy stock and some other personal property which plaintiff owned.

In the meantime, the holders of the chattel mortgage, becoming impatient, had advertised the property for sale and the agreement between plaintiff and defendant we have last mentioned was made on the day preceding that on which the sale was to occur. The parties separated with the understanding that they were to meet at a certain office in Nevada the next day,

before the sale, to close the transaction. There is some dispute relative to the hour of this appointment. Plaintiff contends it was at nine o'clock in the morning and defendant that it was an hour later. Each appeared at the designated place at the time he understood to have been set for the meeting, with the result that they failed to meet and, each thinking the other had changed his mind, proceeded to the place of sale.

Defendant says that immediately before the sale, he again offered to loan plaintiff the money on the terms of the agreement made the preceding day, but plaintiff contradicts this statement and declares that no such offer of assistance was made. The proceeds of the sale were barely sufficient to discharge the mortgage debt and this action is to recover from defendant in his individual capacity the value of the property above the amount of the encumbrance.

Defendant, in his testimony, admits making the sale of the dairy to plaintiff for the sum of $1,800 and the payment by plaintiff of $812 of the purchase money, but denies that he agreed to lend him the sum of $988 for one year or to make him any loan. His version of the agreement is that plaintiff was to borrow the money from the bank for six months and that defendant and his brother-in-law would become sureties on the note. He states that when the indebtedness of the Doubet estate to the bank became due, he importuned plaintiff, without success, to close the transaction on the terms agreed in order that the estate might be released from its obligation, but plaintiff refused, on the ground that he expected to borrow the money from a friend and did not accept defendant's proposal until the day before that on which the property was advertised for sale under the mortgage. That from then on to the very moment of sale, defendant made every effort to induce plaintiff to take the loan, but his efforts were unavailing.

At the close of the evidence, the court refused to give

a peremptory instruction asked by defendant and at the instance of plaintiff instructed the jury as follows: "That if you believe and find from the evidence that on the — day of March, 1905, the estate of D. Doubet was the owner of a certain dairy, consisting of forty-seven head of cattle, horses and wagons and dairy fixtures, and that on said date the plaintiff herein purchased the same from said estate through the defendant, George S. Schneblin, and that the purchase price agreed on at the time was the sum of $1,800, and if you further believe and find from the evidence that at said time there was a mortgage on said property of Elias Dean and G. G. Ewing for the sum of $988, covering all the aforesaid property, due on the twenty-first day of April, 1905, and if you further believe and find from the evidence that it was agreed between plaintiff and defendant at the time that plaintiff should pay the sum of $812 in cash, and that defendant agreed to take up and discharge said mortgage held by said Ewing and Dean and take a new mortgage from the plaintiff for one year for said amount and agreed to carry him for said time for said amount individually, and you find that was the only contract between them in regard to same, and that in pursuance of and in reliance upon said agreement, plaintiff herein paid to said defendant the sum of $812 as aforesaid, and that the defendant failed, neglected, and refused to discharge said mortgage held by said Dean and Ewing as aforesaid and take a new mortgage from the defendant and carry him thereon for one year, and if you further believe and find from the evidence that after the maturity of said mortgage, to-wit, on the twenty-ninth day of June, 1905, all of the aforesaid property purchased by the plaintiff as aforesaid, was foreclosed and sold under the mortgage held by said Dean and Ewing and that at said sale said property was bid in by outsiders for less than the face of said mortgage and thereby became wholly lost to this

plaintiff, then your finding must be in favor of the plaintiff and you will assess his damages at the reasonable market value of said property on the twenty-ninth day of June, 1905, if any, over and above said mortgage of nine hundred and eighty-eight dollars held by Dean and Ewing as aforesaid, not to exceed in all the sum of eight hundred dollars."

On behalf of defendant, the following instructions were given: "If the jury believe from the evidence that defendant Schneblin was ready and willing and able to carry out his contract made with plaintiff on March 17, 1905, in the office of D. M. Gibson, and said contract was not performed on account of the fault of Hedden, the verdict should be for the defendant."

"If the jury believe from the evidence that after the contract of March 17, 1905, in D. M. Gibson's office, any other or different contract was made between Hedden and Schneblin in regard to taking up the Doubet note in the First National Bank and that said note was not taken up or extended under such new contract by reason of the fault of Hedden, the verdict should be for the defendant."

The jury returned a verdict for plaintiff in the sum of $800 and, after ineffectually moving for a new trial, defendant brought the case here by appeal.

Three grounds are urged for a reversal of the judgment: First, "that the agreement by the administrator to pay the debt of his intestate was within the fourth section of the statute of frauds and could only be proved by writing." Second, "that nominal damages only are recoverable for breach of contract to loan money." Third, that the weight of the evidence so preponderates on the side of defendant that the verdict cannot be regarded otherwise than as the result of passion or prejudice. These propositions will be discussed in the order stated.

The contract between plaintiff and defendant was

not in writing and it is argued from this fact that since the proceeds of the loan which defendant promised to make to plaintiff were to be used in paying off the indebtedness of the Doubet estate to the bank, the promise, in effect, was one to answer for the debt of another and, therefore, void under the Statute of Frauds. [R. S. 1899, sec. 3418.]

Conceding for argument that the agreement of defendant had for its main object the release of the estate from the indebtedness to the bank, still we encounter an insuperable obstacle to the conclusion of defendant that it was an agreement to answer for the debt of another within the meaning of the statute. Courts in this State and elsewhere repeatedly have declared that the statute applies only to promises made to the creditor and not to those made to the debtor or some person standing in his shoes, such as a purchaser of encumbered property. "An agreement to pay and discharge a debt made wth a debtor or some person interested for him, if founded upon a new and valid consideration is an independent undertaking and does not come within the letter of the statute." [Green v. Estes, 82 Mo. 337; Howard v. Coshow, 33 Mo. 118; Brown v. Brown, 47 Mo. 130; Flanagan v. Hutchinson, 47 Mo. 237; Besshears v. Rowe, 46 Mo. 501; Winn v. Hillyer, 43 Mo. App. 139; Eastwood v. Kenyon, 11 Ad. and El. 445; Alger v. Scoville, 1 Gray 391; Pipe v. Brown, 7 Cush. 133; Leonard v. Vredenburgh, 8 Johns. 39; Skelton v. Brewster, 8 Johns. 376.] Defendant is driven to say that plaintiff, under the terms of the contract of sale, assumed the relation of the estate to the debt and, if this be true, the promise of defendant was made to the debtor, not to the creditor.

Another reason may be given for denying defendant the use of the statute as a means of escape from liability for the breach of his promise. Plaintiff, in paying the amount of the purchase price in excess of the encum-

brance and in accepting a delivery of the property, fully performed his part of the contract and the rule is well settled that "complete performance of a contract by one contracting party forecloses his adversary from interposing the Statute of Frauds as his defense." [Bless v. Jenkins, 129 Mo. 647; Chenoweth v. Express Co., 93 Mo. App. 185; Mitchell v. Branham, 104 Mo. App. 480; Maupin v. Railroad, 171 Mo. 187; Suggett v. Cason, 26 Mo. 221.]

The adoption of these rules brings us to the question of whether there was any consideration for the promise of defendant. A mere promise to pay an existing debt of another without any new consideration is a *nude pact* and, therefore, void; and, unless we can find in the agreement of the parties a new consideration, defendant cannot be held liable on account of his breach of a naked promise. The promise was made at the time of the original negotiation between plaintiff and defendant for the sale of the property which the latter held as administrator. It was incorporated into the contract of sale as an essential part thereof; without it, the sale could not have been consummated, and, as it is impossible to disconnect it from that contract, we think the true test to be applied is not whether the promisor himself was to receive a reciprocal benefit, but whether the entire transaction, the contract of sale, of which the promise was an incident, is supported by a consideration. It is conceded that plaintiff agreed to and did give a sufficient consideration for the property and *that* consideration is the aliment for defendant's promise. We refer to the opinion of this court in Chenoweth v. Express Co., supra, and to the authorities therein cited, for a more elaborate expression of our views on this subject.

Passing to the second proposition advanced by defendant, we cannot agree with his contention that plaintiff's recovery should have been limited to nominal damages. Adopting plaintiff's version of the facts, it ap-

pears that the actual value of the property exceeded the encumbrance by more than $800, the amount of the verdict. That plaintiff was a stranger in the community where the dairy was operated; that when defendant refused to perform his agreement, plaintiff endeavored, unsuccessfully, to borrow the money elsewhere, and that his interest in the property was lost to him in consequence of defendant's breach. The general principle controlling the measurement of damages in actions founded on breach of contract is that compensation should be equal to the injury, but only such consequential damages are allowed as may be said to be the natural and proximate consequence of a breach, i. e., such as ordinarily results in that class of cases. Remote, indirect, or speculative damages are not recoverable; hence, where the breach is of an agreement to lend money at a particular time, the general rule is that the measure of damages is the amount of the difference between the interest on the loan at the contract rate and at the rate (not exceeding that permitted by law) which the borrower would have had to pay for the money in the market since, in legal contemplation, money is always in the market and procurable at the lawful rate of interest.

But the controlling rule to be applied in settling the question of whether a recovery of consequential damages peculiar to the given case should be allowed is to ascertain whether from the terms of the contract considered in the light of its special circumstances known to both contracting parties it reasonably may be said that the special injury was the natural and proximate result of the breach of a contract made under such special circumstances. Whenever a direct causal relation is disclosed between the wrongful act and an injurious result, then such a result must be deemed to have been within the contemplation of the parties at the time they entered into the contract, and the delinquent party

should be held to answer in damages for the special injury thus inflicted. [1 Sutherland on Damages, (3 Ed.), sections 50, 77; Missouri Real Estate Synd. v. Sims, 179 Mo. 679; Pettit v. Carpenter, 86 Mo. App. 452; Gallup v. Miller, 25 Hun (N. Y.) 298; Banewur v. Levinson, 50 N. E. 10; Doushkess v. Berger Brewing Co., 47 N. Y. S. 312, 20 App. Div. 375; Cole v. Stevens, 162 N. Y. 637; Atherton v. Williams, 19 Ind. 105.] Special circumstances exist in the present case which would make the application of the rule under which nominal damages only could be recovered a flagrant injustice. Plaintiff would not have purchased the property but for the assurance of the loan for the time agreed. Defendant made the promise as an inducement to the sale, knowing that plaintiff was in a position, owing to his lack of other means and to the fact that the amount of the encumbrance as compared to the value of the property was so great that he could not go into the money market and offer security on which he could hope to procure a loan. Under such special circumstances, to hold that in legal contemplation, the money was in the market for him and that all he had to do was to go and get it, would be just as false as it would be unjust. A fiction of this character, though its use may be justified as a shield to protect the contract breaker against liability for remote damages should not be employed to protect him from liability for those damages he must have known would be sustained by the injured party.

On the last proposition of defendant, we find the verdict is supported by substantial evidence. Indeed, if it were in our province to weigh the evidence, we would approve the verdict. Plaintiff was the victim of defendant's wrong and should be adequately compensated. The instructions given expound the law fairly and it follows that the judgment must be affirmed. All concur.