CHANT GRAY AND S. P. HENDERSON, RESPONDENTS, v. WABASH RAILWAY COMPANY, APPELLANT.

Kansas City Court of Appeals. November 9, 1925.

1.—Carriers—In Action for Damages for Delay in Transportation, Petition Held Sufficient, Though Not Directly Alleging Contract Made by Agent at Point of Destination. In an action for loss of profits and expenses sustained by failure of carrier to transport merry-go-round in time agreed, petition, alleging legal effect of acts of defendant's agents at points of shipment and destination and division freight agent who made contract through such local agents, held sufficient, though contract was not directly alleged to have been made with agent at point of shipment.

2.—Same—Question as to Authority of Station Agent to Contract for Shipment by Through Train Held for Jury. Evidence as to authority of carrier's station agent at point of destination to contract for shipment of merry-go-round by through train on certain day, in accordance with arrangement by agent at point of shipment, held to justify submission of question to jury.

3.—Same—Damages—Verdict of $500 for Delay in Transporting Merry-go-Round Held Excessive Above Amount of $70 for Freight, Other Expenses and Nominal Damages. Verdict of $500 for loss of profits and expenses incurred as result of carrier's failure to transport merry-go-round in time agreed, held excessive by amount above $70 for freight and other expenses and nominal damages, because of transitory character of plaintiff's business, and unfavorable weather conditions causing dispersal of crowd on picnic grounds where device was to be set up.

4.—Damages—Lost Profits are Allowed, Unless They Are Speculative, Contingent or Uncertain. Loss of future profits caused by interruptions, or breaking up of an established business, are not too speculative, remote or uncertain to be allowed, but such profits are not allowed in case of a new business not yet opened up, or confined to any location, and the extent of which depended upon public favor and weather conditions.

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 297, n. 71; p. 304, n. 57; p. 320, n. 14; p. 321, n. 19 New. Damages, 17CJ, p. 796, n. 96; p. 797, n. 99.

Appeal from the Circuit Court of Adair County.—Hon. James A. Cooley, Judge.

AFFIRMED (conditionally).

*M. D. Campbell* and *John M. Campbell* for respondent.

*Homer Hall* and *Higbee & Mills* for appellant.

BLAND, J.—This is an action for loss of profits and for expenses suffered by plaintiffs on account of the failure of defendant to transport a merry-go-round in the time agreed. Plaintiffs recovered a verdict and judgment in the sum of $500 and defendant has appealed.

The facts show that about August 5, 1924, plaintiff, Gray, went to defendant's agent, Warden, at Kirksville and requested a baggage car to transport a merry-go-round except the center pole, from Glenwood, a town twenty-five miles distant from Kirksville, to the latter point on Sunday, August 31st. He asked for a baggage car because he understood that on Sunday there was no freight train running which would take his shipment. Gray told the agent that he wanted the swing brought to Kirksville on Sunday for the reason that he would be required to put it up. Sunday evening as it would take from eight to ten hours to unload it and set it up; that he wanted it ready to run on Monday morning at a Labor Day picnic near Kirksville, and had to have it ready early on that day.

Defendant had three trains running from Glenwood to Kirksville; No. 20, a passenger train, No. 96 a through freight that did not usually pick up freight at Glenwood, and No. 68, an extra train running when the amount of freight justified it. No. 96 or the through freight would pick up freight at Glenwood only on an order to do so by the officers of the company at Moberly. Warden told Gray that the charges for transporting the merry-go-round would be $30. Warden told Gray that he did not think the passenger train would take the car but that "they would get it here on train No. 68, an extra, but if not, train No. 96 would sure bring it." Warden stated that he would write to Mr. Buchanan, defendant's division freight and passenger agent at Moberly, about the shipment. Warden testified that he communicated with Buchanan in reference to the shipment. On August 7, 1924, Gray received a letter from Buchanan stating that he had received a letter from Warden in reference to the transportation of the merry-go-round on a passenger train on Sunday, August 31st, saying, I "regret to advise you that we will be unable to furnish a baggage car for this movement but if you so desire we will provide a box car in lieu thereof, and handle same on some convenient freight train at passenger tariff rates, providing you desire this service and will

advise us to that effect sufficiently in advance to permit us to make necessary arrangements."

After receipt of the letter from Buchanan, Gray again talked with Warden on two occasions in reference to the shipment and each time mentioned that the swing must be moved on the 31st of August, and was advised by Warden that one of the trains of that day would move it. Warden told him that when the latter went to Glenwood he had better see the agent there the forepart of the week to be sure that the car would be ordered to be set on Saturday. This, Gray did. He saw the agent at Glenwood on Tuesday and mentioned to him the letter from Buchanan and the agent there said, "he knew about it and the car was already there." Gray was at Kirksville on Sunday the 31st and waited there all day with some trucks and men to handle the merry-go-round but it did not arrive. No. 68 did not run and No. 96 did not stop at Kirksville on that day. There was evidence tending to show that another car of freight located on the same track next to the car containing the merry-go-round was picked up on the 31st by No. 96. The car containing the merry-go-round arrived at Kirksville between eleven and twelve o'clock on the morning of September 1st, too late to be set up for the picnic.

Mrs. Gray testified that she, in company with her brother-in-law, saw Mr. Warden at defendant's office in Kirksville after the receipt of the letter from Buchanan. Warden at that time told her that No. 96 would be sure to bring the merry-go-round to Kirksville on the 31st. He told Mrs. Gray to order the car in plenty of time. She informed him that if they could not get the swing to Kirksville in time that they would take it to Axline. Plaintiff, Henderson, testified that he told Warden on the 5th of August that the swing had to be in Kirksville on the 31st or they could not set it up for the picnic and that Warden said it would be sure to be there at that time. Henderson further testified that he loaded the merry-go-round on Saturday night and early Sunday morning. About six o'clock Sunday morning Mrs. Gray told the agent at Glenwood that the car was loaded and ready to go.

Warden testified that he knew the purpose for which plaintiffs wanted the merry-go-round delivered at Kirksville; that he did not tell plaintiffs that No. 96 would bring it but that he would "try to get it here on some convenient train;" that he told Gray No. 96 did not carry local freight but that "we would do what we could to get them to do it."

The petition alleges that the merry-go-round was at the station at Glenwood on the 31st of August; that defendant entered into an agreement that it would transport the merry-go-round to Kirksville for which plaintiffs agreed and did pay the sum of $30; that—

". . . thereupon defendant furnished a car at its said station at Glenwood and said merry-go-round was by plaintiffs loaded therein, about five o'clock A. M. on the 31st day of August, 1924; that at the time defendant furnished said car, and at the time plaintiffs paid said charge of thirty ($30) dollars, the defendant agreed and promised that said merry-go-round would be, by it, delivered. to plaintiffs at Kirksville, either by one of its trains due to arrive in Kirksville on the afternoon of August 31, 1924, or upon its regular train No. 96, which train passed through defendant's said station at Glenwood and arrived at defendant's station at Kirksville about seven o'clock P. M. on said August 31, 1924."

It is claimed that plaintiffs failed to sustain the allegations of their petition for the reason there is no evidence of any agreement made by the agent at Glenwood whereas the petition alleges the agreement was made by that agent. The petition does not allege directly that the contract was made by the agent at Glenwood but merely pleads the legal effect of what was done by Warden, Buchanan and said agent. Buchanan made the contract with plaintiffs through Warden and the Glenwood agent and its making was consummated when the charges were paid and the shipment accepted by the agent at Glenwood. There is nothing in the contention.

It is insisted that the court erred in refusing to sustain defendant's demurrer to the evidence, for the reason that defendant's station agent at Kirksville could not change the policy of the company by compelling a through train to handle a local shipment originating at Glenwood; that if any station agent had this right, it was the agent at Glenwood and there is no evidence of any contract with that agent. The facts show that the conversation in regard to the shipment was had with the agent at Kirksville and plaintiffs do not contend that he had authority to make the contract in the absence of the peculiar circumstances of this case. After the agent at Kirksville wrote to Buchanan, an agent of the defendant who it is undisputed had the right to make the contract, Buchanan wrote a letter to Gray which, undoubtedly, authorized Warden and the Glenwood agent to complete the contract which Buchanan offered to make. Buchanan's letter shows that he understood that the shipment must go forward on Sunday, August 31st, and that in view of the fact that a special tariff rate was charged that plaintiffs were entitled to a special service, and he agreed with them to transport the merry-go-round on some convenient freight train of August 31st. He notified plaintiffs to "*advise us*" if they desired the service. Plaintiffs notified the local agents that they desired the service. There was nothing in the letter to Buchanan to suggest that Warden did not have authority to handle the matter but the plain inference from the letter is that Warden could handle it.

The agent at Glenwood had been notified of what was desired because he stated to Gray, when Gray first mentioned the matter to him, that he already knew about it and that the car was ready to be loaded. The plain inference from the testimony is that either Warden or Buchanan gave him this information. Warden fixed the rate and undoubtedly defendant permitted him to negotiate the contract. There is nothing in the contention that a binding notice of the intended use to be made of the merry-go-round could not have been given to Warden under the circumstances here present.

We think, however, that the contention of the defendant that the loss of profits attempted to be shown by plaintiff was purely speculative and for that reason the verdict is excessive, is well taken. The testimony on this point is as follows:

It rained at Kirksville on September 1, 1924. Plaintiff, Gray, testified that he was at the picnic grounds about 8:30 A. M. and again at about four o'clock P. M.; that it started to rain between eleven and twelve o'clock that day; that it rained awhile and then it would stop; that it quit raining about three o'clock; that he was not at the grounds between 9:30 and 3:00 o'clock and could not say whether there was a crowd on the grounds up until and during the rain; that there was a crowd there at three o'clock but that it was beginning to disperse then. Plaintiff, Gray, testified that he had been in the merry-go-round business ten or twelve years; that during that time he had experienced rainy days while operating the swing; that he had kept a book account of the amount he had taken in at public gatherings on rainy days as well as on good days. Objection to the introduction of this book was sustained by the court. When asked at what places he had conducted the business during rainy weather, he answered La Plata, on the 4th of July, either in 1918, 1919, or 1920, he could not say which year, and at Axline on Labor Day, the year not given; that at one time he conducted his business at Browning when it rained, he could not say at what time but at La Plata it started to rain about four o'clock and rained until six in the evening; that at Axline it rained in the morning about two hours and at Browning it rained about 2:30 in the afternoon but would slacken up and then rain again; that he would estimate the number of people on the picnic grounds at Kirksville at three o'clock to be about the average crowd "with the rest of the places I have been;" that they had a good crowd there Labor Day; that they had as good a crowd as was at Browning on the 4th of July; that he would have to guess as to the number of people. The crowd was not as large as at Axline; he could not say in reference to La Plata. Over the objection of the defendant, he was then permitted to testify that in his judgment he would have taken in from $850 to $1000 that day at Kirksville.

There was evidence that plaintiffs had agreed to give twenty per cent of the receipts to the promoters of the picnic. One of the men who had charge of the picnic, testifying for plaintiff, stated that he was on the grounds from seven in the morning to four in the afternoon; that the picnic ground was about two miles from the center of the city of Kirksville and had good roads leading to it; that before it rained there were about six hundred automobiles; that it began to rain about five minutes to twelve and rained steadily for possibly an hour and a half; that there were a few showers after that "just light showers;" that when it began to rain the "automobiles began to scatter" and the crowd began to disperse, hunting shelter, and a large per cent of the crowd left and the picnic was practically ruined; that the witness was one of the guarantors of the expense of the picnic and that he came out "in the hole."

Formerly loss of profits as an element of damages was seldom allowed. Now, however, profits are allowed unless they are speculative, contingent or uncertain. [17 C. J. 910.] Although some courts hold to the contrary, it is now established in this State that loss of future profits caused by interruptions or the breaking up of *an established business*, is not too speculative, remote or uncertain to be allowed. [McGinnis v. Hardgrove, 163 Mo. App. 20.] In Morrow v. Railroad, 140 Mo. App. 200, 213, it is stated—

"The general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative and too dependent upon changing circumstances to warrant a judgment for their recovery. . . . Expected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best. They may be recovered only when they are made reasonably certain by proof of actual facts with present data for a rational estimate of their amount, and when this is made to appear, they may be recoverable."

In Gildersleeve v. Overstolz, 90 Mo. App. 518, 525, it is stated—

"Courts have come to recognize this truth; and the rule to be deduced from most of the later cases is, that when the evidence discloses with reasonable definiteness what profits were lost by an alleged injury, damages may be given to compensate the loss; but if the evidence is so vague, as to leave it wholly conjectural or speculative, whether the plaintiff would have made a profit, or how much he would have made, if the defendant had not been derelict, loss of profits should not enter into the award."

It is held that profits of *a new business* not yet opened up are too remote and speculative to be recovered. [Marvel Light & Ice Co. v. Gen. Elec. Co., 259 S. W. (Ark.), 741; 8 R. C. L., p. 511.] In Kerns & Lorton v. Telegraph Co., 170 Mo. App. 642, 648, it is stated—

"Where the profits depend on the business skill or ability of a person or firm, the state of the weather, the fickle favor of the public, the fluctuations of the market and such like, they are held not recoverable because no definite proof can be obtained whereby the loss can be calculated, not because they are profits. Whenever the items of such loss can be ascertained with reasonable certainty they have been allowed." [See, also, Wolcott v. Mount, 13 Am. Rep. 438, 447; Kerns & Lorton v. Tele. Co., 174 Mo. App. 435, 439; Gardner v. Gas & Electric Co., 154 Mo. App. 666.]

The business in which plaintiffs were engaged was not confined to any location but was transitory. At least as to location, it was not permanent. Plaintiffs sued for loss of profits in a location which was entirely new and the extent of the business depended a great deal upon the favor of the public and weather conditions. The weather conditions proved to be unfavorable and plaintiffs' evidence shows, and this testimony is undisputed, that on account of rain and the dispersion of the crowd, at least to a degree, the picnic was caused to be financially a failure. While plaintiff, Gray, testified that he had experience in operating his merry-go-round on rainy days, it was not shown that the conditions under which he formerly operated and those on September 1, 1924, were similar. The Kirksville picnic was held in a grove two miles from the center of the town and the crowd to a large extent dispersed because, it seems, shelter was not near at hand. Whether there was shelter on the other occasions of rain is not shown. He was unable to make comparisons as to crowds in some instances. This all goes to show the difficulty encountered in attempting to show with any degree of certainty loss of profits in a temporary business of this nature where the prosperity of the undertaking depended upon so many uncertain contingencies. But in this particular case the circumstances show that it would be impossible with any degree of certainty to arrive at the amount of the loss of profits plaintiffs sustained. It rained intermittently during the middle of the day, resulting in the partial dispersion of the crowd and the financial failure of the picnic. It is hard to imagine where the ascertainment of loss of profits would be more speculative and uncertain than in this case.

However, defendant admits that if this court holds that its demurrer to the evidence was properly overruled, plaintiffs are entitled to the return of the freight and other expenses and nominal damages, all totaling the sum of $70. If plaintiffs will within ten days remit all of the judgment except $70, the judgment will be affirmed, otherwise the judgment will be reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.