120 P.2d 611

PRICE v. VAN LINT.
No. 4622.

Supreme Court of New Mexico.
Dec. 31, 1941.

Crampton & Robertson, of Raton, for appellant.

Wilson & Wright, of Raton, for appellee.

SADLER, Justice.

In the trial of this action the district court had before it for construction the following agreement in writing, signed by the plaintiff and by the defendant, for claimed breach of which the former sought damages, to-wit:

"Cimarron, N.M. 12-23-1939

"This agreement, entered into by V. J. Van Lint party of the first part and C. S. Price, party of the second part,

"First party agrees to deposit the sum of fifteen hundred on or before the first day of February, A. D. 1940 for which security said party of the second part agrees to give mortgage-deed and insurance for the full sum of fifteen hundred dollards and agrres to use the above named amount for erecting a building on the land purchased from the Maxwell Land grant Company for which a warranty-deed will be executed and delivered. Party of the second part agrees to keep all taxes and insurance paid up to date on the above described property.

"Party of the second Party of the first
 part. part
"(Sgd.) C. S. Price (Sgd.) V. J. van
 Lint."

This inartificially drawn contract resulted from the joint efforts of the parties thereto, the plaintiff having contributed its phraseology in seemingly extemporaneous dictation to the defendant who furnished the mechanical skill of reducing it to form on the typewriter.

The parties to the contract and to this action both resided at Cimarron, in Colfax County, New Mexico. The defendant was local agent for Maxwell Land Grant Company at the time of the contract but without authority to execute a deed on its behalf. The plaintiff, desiring to purchase a small tract of land near Cimarron and to construct a building thereon in which to conduct a business, negotiated with the defendant touching the matter. The contract in question resulted. It embodies mutual covenants and reflects the plaintiff's plan for financing both the purchase of the site and the construction of the building.

Anticipatory of the loan mentioned in the writing, the defendant advanced for the plaintiff's account the sum of $134, the agreed sale price of the tract being purchased as a site, repayable from the proceeds of the loan. This sum, along with a deed prepared by the defendant, in due course was dispatched to Amsterdam in the Kingdom of Netherlands. Likewise and in due course, said deed was returned from Amsterdam, apparently the residence of officials of the grantor with authority to act in this connection, and duly delivered to the plaintiff in the early part of March, 1940. Both parties were aware of the necessity of these steps being taken to consummate the purchase and that a considerable time would necessarily elapse

before the deed could be delivered to the plaintiff.

In the meantime, the plaintiff seemed anxious to proceed with the construction of the proposed building. The defendant had left Cimarron in late December for a sojourn of more than two months at Corpus Christi, Texas. Apparently, meeting with disappointment in realizing funds from which to make the agreed loan, the defendant sought release from the contract under which he obligated himself to make it. This is shown by the correspondence passing between the parties. Indeed, the tenor of defendant's letters to him was such that the plaintiff very well might have elected to claim an anticipatory breach of the agreement. But he did not do so. On the contrary, he refused to release defendant from the contract and on January 16, 1940, caused his attorney to make telegraphic demand on defendant for performance, declaring: "Your contract has not been canceled and Price (the plaintiff) will hold you liable to any actual damages which may result to him by your failure to comply with agreement. * * * If money agreed to be loaned not here by February first you will be held liable for actual damages".

No mutual rescission thus having resulted and the plaintiff not having elected to claim an anticipatory breach of the agreement, the defendant also employed an attorney who, prior to February 1, 1940, the date upon which the defendant promised to deposit the amount of the loan,

conferred with the plaintiff's attorney regarding the matter. At this conference, both attorneys treated the loan agreement as still in force and subject to performance, disagreeing only as to what should be deemed proper performance thereof.

Eliminating recital of the steps by which the parties arrived at their respective positions, it appears from a finding based on the letter of January 24, 1940, from defendant's attorney to plaintiff's attorney, that prior to February 1, 1940, the date on or before which the defendant was required to "deposit" the amount of the loan, he made the following offer of performance to the plaintiff, to-wit: " * * * that he (defendant) deposit in First National Bank in Raton before February 1, 1940, the full sum of the contemplated loan (that is to say, $1,500.00 less the $134.00 already advanced), this amount to be made available to the plaintiff as soon as the plaintiff should receive his deed to the property in question and as soon as the plaintiff and his wife should give a suitable first mortgage deed as security for the money, the money to be disbursed in any reasonable manner satisfactory to both parties, guaranteeing that it would be used to pay off all possible material and labor claims which might give rise to mechanic's liens so as to insure that the mortgage would be a first lien."

The plaintiff refused this tender of performance and through his attorney by letter of January 24, 1940, advised defendant's attorney as follows: "If Mr. Van

Lint will deposit and make available to Mr. Price for the purpose of paying bills on or before the first day of February, 1940, the sum of $1366. plus $72.00 to cover a portion of the actual expense which his announced failure to comply with his agreement has caused Mr. Price, Price and his wife will sign the note for $1500.00 according to the terms and on the form shown you this afternoon, and will also execute and acknowledge a formal written contract to execute and deliver a mortgage upon the tract of land purchased from the Maxwell Land Grant, including of course the new improvements being now constructed thereon, and as security for said note, and will waive any and all other damages which he feels he has obviously suffered in connection with this matter."

After receipt of the letter of January 24, 1940, just quoted, the defendant's attorney on January 29, 1940, addressed the following communication to the plaintiff's attorney: "Since you and Mr. Price have rejected in advance a literal compliance with the contemplated loan arrangement, it would be a useless and futile thing for Mr. van Lint to arrange for depositing the money along the lines which I suggested to you. Accordingly, Mr. van Lint will not arrange for the deposit of the money and will not advance any more money to Mr. Price."

Touching these matters, the trial court made the following additional findings:

"That the defendant has never receded from his position as expressed in the letters of January 24, 1940, and January 29, 1940, written by his attorney, and the plaintiff has never receded from his position as expressed in the letter of January 24, 1940, written by his attorney.

"That the plaintiff has never tendered to the defendant any mortgage deed; that the defendant has never offered to or been willing to advance to the plaintiff the balance of the agreed loan prior to the receiving from the plaintiff of a valid mortgage deed on said premises; that the plaintiff has never repaid to the defendant the sum of $134.00 advanced to him by the defendant or any part thereof or any interest thereon."

For such weight as they properly may have in construing the contract involved, the substance of other findings should be stated at this time. They stand unchallenged. Indeed, none of the facts found by the court as hereinabove recited, are excepted to by either party.

The court found that the loan was to be for a period of two years; that the loan was to bear interest at the rate of 10% per annum; that the mortgage was to cover the land being purchased by the plaintiff from Maxwell Land Grant Company; and that the "deposit" was to be made at First National Bank in Raton.

It further found that prior to his departure for Corpus Christi, Texas, the defendant informed Lorenzo Rosso of Ci-

marron, New Mexico, doing business as Cimarron Mercantile Company, and R. E. Adams of Springer, New Mexico, doing business as R. E. Adams Lumber Company, of his agreement to make a loan of $1,500 to the plaintiff; that on January 9, 1940, the defendant wrote and mailed a letter to said Lorenzo Rosso at Cimarron, New Mexico, stating that the contemplated loan to plaintiff was not going through due to unforeseen difficulties met with by the defendant; that a similar notice was given by defendant to R. E. Adams Lumber Company; and "that some time thereafter both Cimarron Mercantile Company and R. E. Adams Lumber Company refused to extend any substantial further credit to the plaintiff".

It was also found that because of defendant's refusal to advance the amount of the loan to plaintiff on or before February 1, 1940, the plaintiff was compelled to suspend construction work on his building; that but for said refusal, the building would have been ready for use and occupancy by February 10, 1940, instead of April 27, 1940.

The trial court concluded: "That the written agreement made and entered into by and between the plaintiff and defendant, a copy of which is attached to the plaintiff's Complaint and marked Exhibit A, when properly construed, required the defendant to deposit the balance of the agreed loan on or before February 1, 1940, and that the amount so deposited should be immediately paid to the plaintiff, whether or not the plaintiff should at that time have received a deed to the real estate, and whether or not the plaintiff should at that time be the legal owner or the record owner of said real estate, and whether or not the plaintiff at that immediate time should be able to give a valid mortgage, and whether or not the real estate at that time should be free from liens and encumbrances; that the defendant, in refusing to deposit said balance for the plaintiff's immediate use on or before February 1, 1940, breached said agreement, and the defendant is liable to the plaintiff for the damages resulting therefrom."

Having thus concluded, the court rendered judgment in plaintiff's favor for $543.55, being the aggregate amount of plaintiff's damage as ascertained in specific findings, after deducting therefrom $134 advanced by defendant to cover the purchase price of the real estate with accrued interest thereon.

We have, then, the case of an agreement by the defendant to make a loan to the plaintiff in the sum of $1,500 for two years at a specified rate of interest; to deposit the amount thereof in a certain bank on or before a fixed date; and to have as security for the loan a mortgage lien on a certain tract of land then being purchased by the plaintiff from a third party, whose deed to plaintiff, it was known to the parties, necessarily could not be delivered for some time, although neither party to the contract doubted its ultimate delivery. The trial court construed the relative obligations of the parties under this agreement as set forth in its conclusion of

law hereinabove quoted. The court held in substance and effect that the written agreement, interpreted in the light of the unchallenged findings, imposed upon the defendant the obligation to deposit to the plaintiff's credit in the bank named the amount of the loan, notwithstanding the fact that because of the delayed delivery of the deed, the plaintiff could not then deliver to the defendant the mortgage which was to furnish the security for the loan.

The correctness of the trial court's ruling on this question presents the main point for decision in the case. It involves the determination whether the plaintiff's promise to give a mortgage to secure the promised loan and the defendant's promise to make the loan are dependent or independent covenants of the contract. If the former, then the plaintiff's failure to allege performance denies him the right of recovery. If the latter, the defendant was under obligation to perform his covenant and look to his remedy for any breach of performance on the plaintiff's part. 3 Williston on Contracts, Rev.Ed., 2286, et seq., §§ 812–887 (Ch. XXIX); Restatement of the·Law (Contracts), §§ 266, et seq.; 17 C.J.S., Contracts, § 344, et seq.; 12 Am.Jur. 850, § 298; Glaser v. Dannelley, 23 N.M. 593, 170 P. 63; Brenon Mfg. Co. v. Martin & Sweeny, 27 N.M. 74, 196 P. 172; Nunlist v. Keleher, 31 N.M. 358, 246 P. 904, 48 A.L.R. 366; Walters v. United States Fidelity & Guaranty Co., 35 N.M. 4, 288 P. 1044.

The rule of decision is not to construe promises as independent unless the nature of the contract or the surrounding circumstances compel a contrary inference. In other words, interpretation favors the conclusion of an agreed exchange of performance as the true intent of the parties unless such a construction does violence to the language employed in the light of known facts and circumstances. In Brenon Mfg.. Co. v. Martin & Sweeny, supra, [27 N.M. 74, 196 P. 173], we said: "It is a general rule that covenants are to be construed to be either dependent or independent of each other, according to the intention and understanding of the parties and the common sense of the case."

In Glaser v. Dannelley, supra, our holding as epitomized in the syllabus prepared by the court is as follows: "Where a contract contains mutual promises to pay money or perform some other act, and the time for performance for one party is to, or may, arrive before the time for performance by the other, the latter promise is an independent obligation, and nonperformance thereof merely raises a cause of action in the promisee, and does· not defeat the right of the party making it to recover for a breach of the promise made to him. Contract construed, and agreement held to be independent."

This holding is but an application of the first portion of Rule 1 of the well known Serjeant Williams' Rules, annexed as a note to Pordage v. Cole, 1 Wm.·Saund.

319"1". See 2 Smith's Leading Cases, 13th Ed., pp. 11 et seq. While certain of Serjeant Williams' rules are the subject of critical comment by Professor Williston in his late work on Contracts (Volume 3, Revised Edition, §§ 820–823), we find nothing in his discussion critical of that portion of Rule 1 approved by us in Glaser v. Dannelley. We think it is decisive of the question presented. When we apply it to the situation disclosed by the contract in question, interpreted in the light of the findings made, we are compelled to hold with the trial court that the mutual covenants are independent of each other.

■ We are not unfamiliar with the rule that where the mutual covenants go to the entire consideration on both sides, they are considered mutual conditions and dependent unless there are clear indications to the contrary. 17 C.J.S., Contracts, § 344 p. 800. We seek, then, in the findings, something to support the trial court's conclusion that the covenants are independent. The contract in question was made on December 23, 1939. It obligated the defendant to deposit in First National Bank in Raton, New Mexico, the amount of the loan on or before February 1, 1940. It obligated the plaintiff to give as security a mortgage on the land he was purchasing from Maxwell Land Grant Company. It was well known to both parties that the deed must go to Amsterdam in the Kingdom of the Netherlands for execution by proper officers of the corporate grantor and that a considerable period would "necessarily elapse before said deed could be delivered to the plaintiff". While it may be said to have been within the contemplation of the parties that by expedient passage and return, a delivery could occur before the defendant was called upon to perform by depositing the loan in the bank agreed upon; nevertheless, and necessarily, the parties must have known that the day for performance by defendant might arrive before the plaintiff would be in a position to give the promised mortgage following delivery of his deed upon its return from abroad. This brings the case squarely within the test applied in Glaser v. Dannelley, supra.

■ It is the general rule that a breach of contract to loan money, standing alone, imposes no liability to damages. But this rule does not apply where there are extraordinary circumstances, as in this case, which result in injury. The defendant knew that the plaintiff was preparing to erect a building on the lot he had purchased, and to assist the plaintiff in securing material for the erection of such building, he notified certain material dealers that he had agreed to make the loan for the intended purpose. This caused the dealers to furnish to plaintiff a portion of the material necessary for the erection of the building, which was commenced the 20th day of December, 1940. Thereafter the defendant, knowing the reliance placed upon his agreement by plaintiff and the material dealers, notified the same dealers after considerable material had been furnished, that he would not make the loan. Thereupon, they not

only refused to continue furnishing material but filed material men's liens against the property to secure that previously supplied. The result was that the plaintiff was unable to secure a substitute loan until the 12th day of April, 1940, by reason of which the building was not ready for occupancy until the 27th of April, 1940, two months and seventeen days after it would have been completed had the loan been made by defendant as provided in the contract.

■■ These extraordinary circumstances resulted in injury to the plaintiff, and defendant is liable for the consequential damages. Avalon Construction Corp. v. Kirch Holding Co., 256 N.Y. 137, 175 N.E. 651; National Bank of Cleburne v. M. M. Pittman Roller Mill, Tex.Com.App., 265 S. W. 1024, 36 A.L.R. 1405, and annotation at p. 1408; Westesen v. Clathe State Bank, 78 Colo. 217, 240 P. 689, 44 A.L.R. 1484. The rule is variously stated by text writers, as follows:

"Damages for breach of a contract to lend money are measured by the cost of obtaining the use of money during the agreed period of credit, less interest at the rate provided in the contract, plus compensation for other unavoidable harm that the defendant had reason to foresee when the contract was made." Restatement of the Law, "Contracts", § 343.

"On breach of a contract to loan money where special circumstances were known to both parties from which it must have been apparent that special damages would be suffered from a failure to fulfill the obligation, such special damages as may appear to have been reasonably contemplated by the parties are recoverable. Thus, special damages may be recovered where the money is to be used for a particular purpose which is known at the time to the party agreeing to make the loan, provided, of course, that such damages are not speculative or remote." 15 Am.Jur., "Damages", § 62, p. 466.

See, also, Williston on Contracts, Rev. Ed., Volume 5, § 1411; 25 C.J.S., Damages, § 79.

The plaintiff paid to lien claimants the sum of $34 for attorney's fees and filing fees incurred by such claimants. We assume this reimbursement was claimed by virtue of § 82-213, N.M.Stats.1929, which is as follows: "Any number of persons claiming liens may join in the same action, and when separate actions are commenced the court may consolidate them. The court may also allow, as part of the costs, the moneys paid for filing and recording the lien, and reasonable attorney's fees in the district and supreme courts."

■ No suit was filed and no court exercising its discretion allowed filing fees and attorney's fees. Under the circumstances the lien claimants were not entitled to such fees, and it could not reasonably have been contemplated by the parties at the time the contract was made that such fees would be paid by plaintiff.

■ The item of $35 paid to Fred C. Stringfellow, attorney for Santa Fe Build-

ers Supply Company who made the substitute loan to plaintiff, was correctly allowed. This was for examination of the abstract of title and other papers, and for closing the loan. This is an ordinary and usual expense in connection with the loaning of money upon real property and must have been contemplated by the parties. The defendant, knowing the title, apparently agreed to make the loan without the furnishing of an abstract of title or an opinion as to the condition of the title. Culp v. Western Loan & Building Co., 124 Wash. 326, 214 P. 145, on rehearing 127 Wash. 249, 220 P. 766; Hoch v. Braxmar, 109 App.Div. 209, 95 N.Y.S. 647.

Item "E" allowed by the court was for $46. The plaintiff borrowed $150 from the Industrial Finance Corporation of Trinidad, Colorado, by refinancing a loan on his automobile. That financial institution charged him $46 or about 60% interest for this loan. We find nothing in the record (if that is material) which would indicate the necessity for the borrowing of money at this extortionate and usurious rate of interest. The plaintiff had agreed to pay 10% interest on the loan to be obtained from defendant, which was the highest rate permitted by the laws of New Mexico, upon such loans. We are of the opinion that the plaintiff could not recover damages because of interest paid in excess of the highest rate authorized by law. Hedden v. Schneblin, 126 Mo.App. 478, 104 S. W. 887. This item should not have been allowed.

Item "F" allowed by the court was in the sum of $21.30. The court found that plaintiff had arranged to buy some roofing material at a cash price of $213.07, but that because of the failure of defendant to furnish the money it cost him on an installment basis $21.30 extra. We are of the opinion that such damage was not reasonably in contemplation of the parties. The defendant could not reasonably have anticipated that plaintiff would or could secure credit on merchandise if unable to borrow money.

The court found that the defendant was entitled to $298.75 damages, "being the net loss to the plaintiff in respect of the profits which the plaintiff would have received from the operation of his business in his new building during the period from February 10, 1940, to April 27, 1940." This was arrived at by the conclusion that the profits would amount to $5 a day for the time mentioned and that there should be deducted therefrom $31.25 which would be the saving of interest for the like period. The evidence upon which this finding was based was that of the plaintiff which was in substance that he intended to operate a night club in the building; that, prior thereto, he had operated a saloon in the town of Cimarron, and that based upon his knowledge of the saloon business, he estimated that the net profits would be not less than $5 per day.

There is no evidence from which the jury could determine for itself the amount of the lost profits (if any) plaintiff sustained during the two months and 17

70

days, except the conclusion of the plaintiff himself, that it was $5 a day. Undoubtedly, the plaintiff was entitled to recover his actual loss of profits by reason of the circumstances we have mentioned, if they were capable of legal ascertainment. De Palma et al. v. Weinman et al., 15 N.M. 68, 103 P. 782, 24 L.R.A.,N.S., 423; Holt v. United Security Life Ins. Co., 76 N.J.L. 585, 72 A. 301, 21 L.R.A.,N.S., 691; Equitable Mtg. Co. v. Thorn, Tex.Civ.App., 26 'S.W. 276. But we are of the opinion that there was no basis in the evidence for the conclusion of the witness (apparently testifying as an expert) that his profits for the time lost would have been $5 a day. It was purely a speculative estimate unsupported by any substantial testimony.

 But aside from the considerations stated from the fact that plaintiff was entering into a new business never opened up, any mere estimate as to profits is too remote and speculative to establish damages. Gray v. Wabash Ry. Co., 220 Mo. App. 773, 277 S.W. 64; Marvell Light & Ice Co. v. General Electric Co., 162 Ark. 467, 259 S.W. 741.

"He who is prevented from embarking in a new business can recover no profits, because there are no provable data of past business from which the fact that anticipated profits would have been realized can be legally deduced. 1 Sedg.Dam. § 183; Red v. City Council, 25 Ga. 386; Kenny v. Collier, 79 Ga. 743, 8 S.E. 58; Greene v. Williams, 45 Ill. 206; Hair v. Barnes, 26 Ill.App. 580; Morey v. [Metropolitan]

Light Co., 38 N.Y.Super.Ct. 185." Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96, 99.

 We are of the opinion that item "H" in the sum of $62.50 for rental lost by the plaintiff during the period from February 10, 1940, to April 27, 1940, was proven by substantial testimony. It establishes a rental value of the restaurant portion of the building, thereafter rented at $25 a month.

 The item allowed by the court of $173.40 for necessary travel expenses incurred by the plaintiff in attempting to secure another loan was proved by substantial evidence and correctly allowed by the court.

 An item of $20 was allowed by the court for charges for telephone calls necessarily incurred by the plaintiff. There was only one item of something over $5 to defendant that plaintiff specifically testified about. The plaintiff testified "I called the Santa Fe Building Supply Company (at Santa Fe) five or six times and Raton numerous times." But this does not establish anything. There is no evidence to show the necessity for calling defendant at Corpus Christi. This item should not have been allowed on the basis of testimony before the court.

 The claim of error, urged as to each item allowed as damages, based upon the difference between balance of promised loan in sum of $1,366 and the new loan in sum of $1,500, is denied. The difference is so small as strongly to suggest that the cost

of securing a loan in the lesser amount would be as great as in the slightly larger amount.

We find that the trial court allowed the damages in the sum of $420.05 erroneously, in that there was no substantial evidence to support the several items aggregating that sum. That there was substantial evidence to support items of damage aggregating $270.90. If the appellee will enter a remittitur in this court in the sum of $420.05, the judgment will be affirmed for the balance and the costs of the appeal will be divided equally between the parties, failing which the judgment will be reversed and the cause remanded with instructions to the district court to grant a new trial, said costs to be charged to appellee. The appellant's counterclaim, properly allowed, is taken care of in the remittitur authorized.

BRICE, C. J., and ZINN, MABRY, and BICKLEY, JJ., concur.