429 P.2d 368

**BANK OF NEW MEXICO, a banking corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**Earl B. RICE and Lahoma Rice, his wife, Defendants-Appellees and Cross-Appellants.**

**and**

**Earl Rice Construction Company, Inc., Intervenor-Appellee.**

**No. 8231.**

Supreme Court of New Mexico.

May 8, 1967.

Rehearing Denied July 17, 1967.

Marron & Houk, Dan A. McKinnon, III, Albuquerque, for appellant and cross-appellee.

Toulouse, Ruud, Gallagher & Walters, Dolan & Clear, Menig & Sager, Albu-querque, for appellees and cross-appellants and intervenor-appellee.

## OPINION

WOOD, Judge, Court of Appeals.

The issues involve a contract to lend money, damages for breach of contract and a directed verdict on promissory notes.

Plaintiff sued defendants to recover the balance due on two promissory notes. Defendants counterclaimed, alleging breach by plaintiff of a contract to lend money. Corporation (Earl Rice Construction Company, Inc.) intervened, claiming breach of the same contract to lend money. The jury found for Rice (Earl B. Rice) on the counterclaim and for the corporation on the complaint in intervention. Plaintiff appeals from the judgment entered on these verdicts. Defendants cross appeal from the trial court's action in directing a verdict in favor of plaintiff on the notes. We decide the cross appeal first.

Plaintiff is the holder of the two notes which were executed by Mr. Rice and guaranteed by Mrs. Rice. The notes having been produced and the signatures established, plaintiff was entitled to recover unless the defendants established a defense. See § 50A-3-307, N.M.S.A.1953.

Defendants contend that the evidence raises a question of fact as to payment on the notes, as to computation of interest, as to consideration and as to discharge of the larger note because of alteration. It also contends that even if the evidence is undisputed, the evidence is such that the jury should have determined whether the evidence was to be believed. Thus, it asserts that it was error to direct a verdict.

■■ The court, in considering the motion for directed verdict, must look at the evidence in the light most favorable to the party resisting the motion, indulging every inference in support of the party moved against and ignoring conflicts in the evidence unfavorable to him. If reasonable minds may differ as to the conclusion to be reached under the evidence or the permissi-

ble inferences, the question is for the jury. Jones v. New Mexico School of Mines, 75 N.M. 326, 404 P.2d 289 (1965). Under this rule, plaintiff may obtain a directed verdict. Heisch v. J. L. Bell & Co., 11 N.M. 523, 70 P. 572 (1902). See Melhop v. Costa, 26 N.M. 337, 192 P. 477 (1920). We apply the rule here.

■ The evidence traces the history of the two notes. This evidence shows the renewal of one of them, a partial payment (leaving the balance due claimed by plaintiff) and the transfer of the notes from plaintiff's uptown to its downtown branch. It shows the misposting of the notes to the corporation and correction of that misposting. It shows a portion of the notes were charged off as loss.

Defendants contend that plaintiff's ledger entries raise a question of fact concerning payment. The ledger at the uptown branch was debited with the amount due, leaving a zero balance. However, the downtown ledger was credited with the same amount. The evidence is undisputed that these were matching entries made in keeping books on the transfer between the branches.

There is evidence concerning payments on other notes and transfer of at least some of these notes between the branches. This evidence shows the balance on these other notes was eventually reduced to zero either by payments made or by charge off through foreclosure.

There is no conflict in the above evidence. Taken in the light most favorable to defendants, it does not support an inference that payment had been made on the amount claimed to be due. This evidence would not support an inference that plaintiff had failed to apply any payments to the two notes here involved.

■ Defendants assert that even if plaintiff is entitled to the amount claimed on the larger note, the evidence indicates the amount of interest claimed is erroneous. At trial the testimony as to the amount of interest due was not disputed. Here, defendants present their own mathematical computation to demonstrate an error of approximately $35.00 in the amount of interest. This disagreement as to the amount of interest is not a conflict in the evidence; it comes after a trial at which there was no issue concerning the amount of interest due. It is not an issue here. Even if it were an issue, defendants gain nothing since the interest awarded in the judgment is less than defendants' own computation.

■ Defendants assert there is an issue of fact on the defense of consideration. They say there is a question as to consideration because one of the notes had been renewed. This is answered by § 50A–3–408, N.M.S.A.1953, which provides in part:

"* * * [N]o consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."

■■ There were two alterations of the larger note. (1) The note was in the amount of $77,905.00. This amount had been crossed out and the figure $54,255.00 had been penciled in. This lesser figure was the balance remaining after a payment was made. It is the amount sued for, and it is the amount of the judgment entered on the directed verdict. (2) A red line was drawn across the face of the note. The evidence is that this line was drawn by the Bank Examiner to indicate he had examined the note.

Defendants contend that these alterations raise a question of fact as to whether they were discharged from liability on the note. Section 50A–3–407, N.M.S.A.1953, pertains to alteration of commercial paper. It provides in part:

* * * * * *

"(2) As against any person other than a subsequent holder in due course

"(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;"

\* \* \* \* \* \*

The statute is not applicable unless the alteration made by the holder was fraudulent. There is no evidence from which an inference of fraud could be drawn, and thus no question of fact for the jury concerning discharge.

There is no conflict in the evidence concerning the notes and the ledgers. Defendants contend that it was for the jury to determine whether the evidence was to be believed. They point out that plaintiff's case was made out by the bank's records and by the bank's employees. Relying on Morrill v. Jones, 26 N.M. 32, 188 P. 1108 (1920), they assert that the employee being an interested party, the credibility of the evidence was for the jury.

The fact that a witness is interested or disinterested is not the basis for determining whether his testimony is or is not to be believed. Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940), lists four categories where the trier of facts could disregard undisputed testimony. The two categories on which defendants rely are (1) suspicious circumstances surrounding the transaction testified to by the bank employees and (2) that inferences drawn from the facts and circumstances cast doubt on the truth or accuracy of the undisputed evidence. There is nothing in the record here on which to base application of either category. The circumstances here are neither suspicious nor do any inferences that may be drawn cast doubt on the accuracy of the undisputed evidence.

The trial court did not err in directing the verdict in favor of plaintiff.

We now decide the issues raised by the appeal.

The issue submitted to the jury, without objection, was:

"Did the Bank of New Mexico agree that it would lend Rice Construction Company $405,000.00 on the twenty-seven lots described in the mortgage dated 25 April 1962, at $15,000.00 per lot, when construction thereon was completed through the stage of Second Federal Housing Administration Inspection, \* . \* \* in consideration of which promise by the Bank, Rice Construction Company agreed to borrow from the Bank its construction money as needed on each of the lots? \* \* \*"

The jury was also instructed that if it found such an agreement, and that the bank breached the agreement, it was to ascertain the damages suffered by either Mr. Rice or the Earl Rice Construction Company as a proximate result of the breach.

Plaintiff contends that it was error to allow the jury to award damages in favor of Rice for breach of a contract to which Rice was not a party.

It is a general rule of law that one who is not a party to a contract cannot maintain a suit upon it. Staley v. New, 56 N.M. 756, 250 P.2d 893 (1952); see Crawford v. Taylor, 58 N.M. 340, 270 P.2d 978 (1954); Cillessen v. Kona Company, 73 N.M. 297, 387 P.2d 867 (1964). A third party may be the beneficiary of such a contract, and as a beneficiary may have an enforceable right against a party to the contract. Permian Basin Investment Corp. v. Lloyd, 63 N.M. 1, 312 P.2d 533 (1957); Hoge v. Farmers Market & Supply Co., 61 N.M. 138, 296 P.2d 476 (1956); Key v. George E. Breece Lumber Co., 45 N.M. 397, 115 P.2d 622 (1941). The problem of determining whether a contracting party is liable to a third party beneficiary involves the law of contract. Permian Basin Investment Corp. v. Lloyd, supra.

Rice asserts personal damage to himself resulting from the *manner* in which the contract was breached, a claim personal to himself based on plaintiff's *conduct* in breaching the contract. Rice does not sue for breach of contract.

There is an assertion in Rice's brief (unsupported by a transcript reference) that Mr. Rice owned all the stock in the corporation. Nevertheless, the corporation and a stockholder are separate entities. Shillinglaw v. Owen Shillinglaw

Fuel Co., 70 N.M. 65, 370 P.2d 502 (1962); London v. Bruskas, 64 N.M. 73, 324 P.2d 424 (1958). Rice's ownership of the stock does not, in itself, authorize him to sue as an individual. W. Fletcher, Private Corporations § 5910 (perm. ed. rev. repl. 1961).

 Generally, an action to redress injuries to a corporation cannot be maintained by a stockholder in his own name or right. Cullum v. General Motors Acceptance Corp., 115 S.W.2d 1196 (Tex.Civ.App. 1938). This, however, does not bar one who is a stockholder from suing on the basis of duties owed personally to him. As stated in W. Fletcher, supra, § 5921:

> "A stockholder may sue as an individual where the act complained of creates not only a cause of action in favor of the corporation but also creates a cause of action in favor of the stockholder as an individual, as where the act is in violation of duties arising from contract or otherwise, and owing to him directly, * * *"

Illustrations of individual causes of action are set out in W. Fletcher, supra, § 5915. See Ritchie v. McMullen, 79 F. 522 (6th Cir. 1897); Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898, 167 A.L.R. 271 (1946); Von Au v. Magenheimer, 126 App.Div. 257, 110 N.Y.S. 629 (1908). Compare Cullum v. General Motors Acceptance Corp., supra; Stinnett v. Paramount-Famous Lasky Corp., 37 S.W. 2d 145 (Tex.Comm.App. 1931); Shaw v. Empire Savings & Loan Assn., 186 Cal. App.2d 401, 9 Cal.Rptr. 204 (1960).

Thus, Rice could have an individual cause of action against plaintiff for violation of a duty owed directly to Rice. Rice's asserted personal claim is the manner in which plaintiff breached the contract with the corporation; that is, plaintiff's conduct in committing the breach. We assume, without deciding, that this does state a personal claim.

 This personal claim was not submitted to the jury. The jury did not decide whether plaintiff had violated any duty owing to Rice and did not award Rice any damages for violation of any such duty. The jury was told that Rice could be awarded damages resulting from plaintiff's breach of a contract with the corporation. Rice cannot recover damages for breach of a contract to which he was not a party where he was not a beneficiary of the contract. It was error to submit to the jury the question of damages to Rice for breach of the contract between plaintiff and the corporation.

Plaintiff asserts that the issue of breach of contract, as between plaintiff and the corporation, should not have gone to the jury because reasonable minds could not differ on plaintiff's excuse for the breach.

 The jury was instructed that plaintiff would be excused from lending money to the corporation if at the time of the breach it reasonably believed that the corporation was unable to pay its debts as they matured. This instruction is based on Restatement of Contracts § 287 (1932). Whether the instruction is a correct statement of law is not in question; the question is whether there was evidence on which to submit the issue of excuse to the jury.

There is evidence which would support a determination that plaintiff breached the contract in August 1962. A branch loan credit report of plaintiff in July 1962 indicates that past experience with the borrower (the corporation) was satisfactory and recommended that a loan of $70,000.00 be committed. An official of the bank testified that plaintiff's concern over the line of credit to the corporation was a growing affair—the evidence indicates there was "some" concern in August but that the concern grew in the fall of 1962.

Admittedly, there was evidence to the contrary. However, the issue is not whether plaintiff had a reasonable belief, but whether there was evidence from which the jury could determine the question. The above evidence would support a determination that plaintiff did not have a reasonable belief at the time of the breach that the corporation was unable to pay its debts

as they matured. It was not error to submit the question of excuse for the breach to the jury.

The remaining contentions pertain to damages. Price v. Van Lint, 46 N.M. 58, 120 P.2d 611 (1941), states the rule concerning damages for breach of a contract to lend money.

 One item of damages is " * * the cost of obtaining the use of the money during the agreed period of credit, less interest at the rate provided in the contract * * * " Plaintiff asserts, and the corporation does not dispute, that the corporation obtained money from other sources after plaintiff repudiated the contract. There is no evidence that these lenders charged a higher rate of interest than that which the parties had agreed upon. Accordingly, there was no basis for an award of damages based on the cost of obtaining the substitute money.

From this plaintiff reaches the conclusion that the corporation could only recover nominal damages. We disagree.

In Price v. Van Lint, supra, the defendant knew how the plaintiff intended to use the money and of plaintiff's reliance upon defendant's agreement to lend the money. In such circumstances, it was held that defendant was liable for consequential damages. The consequential damages, however, must be damages that were reasonably contemplated by the parties. Price v. Van Lint, supra.

Here, the plaintiff knew how the corporation intended to use the money and knew the corporation was relying on plaintiff for the money. The corporation could recover damages it suffered as a consequence of plaintiff's breach of contract. The corporation was not limited to nominal damages.

Plaintiff asserts that there is no proof of compensatory damages as a consequence of the breach.

 Damages has two aspects. There must be proof that damages resulted—the damage resulting from breach of contract must be of a kind and character susceptible of proof. Louis Lyster, Gen. Con., Inc. v. Town of Las Vegas, 75 N.M. 427, 405 P.2d 665 (1965). There must be proof of the amount of damages—while uncertainty as to amount will not preclude recovery, Jackson v. Goad, 73 N.M. 19, 385 P.2d 279 (1963), still the amount allowed must be subject to reasonable ascertainment. Louis Lyster, Gen. Con., Inc. v. Town of Las Vegas, supra.

We review the evidence in the light of these rules, keeping in mind that the contract was to loan money on twenty-seven lots at $15,000.00 per lot, and that damages resulting from breach of this contract must have been reasonably contemplated by the parties. The corporation contends the following supports the verdict:

 (a) Decline in Net Worth—Rice testified that before the breach " * * * I was worth over a million dollars. It was going down rapidly, and I just don't remember dates." Assuming that this testimony means that the corporation was worth a million dollars, and the corporation net worth was going down rapidly, the testimony does not show that the decline was due to the breach.

(b) Financial Statements—There are separate financial statements for Rice and for the corporation dated August 1, 1962. Subsequent statements combine the finances of Rice and the corporation. The subsequent statements show a marked decline in net worth. But whose net worth, Rice's or the corporation's? The accountants' report states that the condition of the books, records and internal controls were such that they could not make any statement as to the competence of evidence on which the financial data of the corporation was based. Plaintiff's records also indicate an inability to segregate the financial condition of the corporation from the financial condition of Rice. There are other problems of comparison; but apart from these problems, the financial statements do not show damages to the corporation resulting from the breach of contract.

**178**

(c) Line of Credit—The testimony is that the single most important asset of a tract developer is his line of credit. If the credit is cut off, the developer would not have the money to continue. Here, the corporation did get money to continue. The record shows that plaintiff loaned the corporation money on five of the twenty-seven lots and that the corporation obtained loans on nineteen of the lots from other sources. As to the remaining three, there is no evidence as to whether they were developed and no evidence that they were not developed because of the corporation's inability to borrow money.

(d) The Stasey Lots—There is testimony that a contract had been entered to sell fourteen of the twenty-seven lots to Mr. Stasey, and that plaintiff blocked this sale, which was for $56,200.00. Assuming, but not deciding, that this was a consequence of plaintiff's breach of contract, there is no evidence as to what happened to the lots subsequently. Were they eventually sold, and if so, at what price? If the lots were retained, did their market value change? Absent such evidence, there is no basis for a "reasonable ascertainment" of how much damage resulted.

(e) Airplane and Race Horses— Prior to the breach, Mr. Rice owned an airplane and two race horses. His testimony is that someone from the bank suggested that he sell the airplane and that he "had to sell" the horses. If we assume that the airplane and horses belonged to the corporation, and if we further assume that these assets were liquidated as a result of the plaintiff's breach of contract, we still have the question of how much damage. There is no testimony as to purchase price, sales price or amount of loss.

(f) Subcontractor and Supplies— The testimony is that two days after plaintiff cut off the line of credit, Mr. Rice received telephone calls from panicky subcontractors and material and supply men. They had heard of the bank's actions; they were concerned; they had money at stake.

Between the time of the breach and the time plaintiff brought foreclosure proceedings, none of the materialmen or creditors filed suit against either Rice or the corporation. Only one lien was filed on the project. This evidence doesn't show damage resulting from plaintiff's breach. There is no testimony that subcontractors or suppliers refused to do business with the corporation as a result of the breach.

(g) Security Given to Unsecured Creditors—There is testimony that after the breach the corporation gave mortgages to secure previously unsecured accounts with Springer Concrete, Driver-Miller and Kinney Brick. There is no testimony as to what happened to the Kinney Brick mortgage. The Driver-Miller mortgage was paid off. The Springer Concrete mortgage was foreclosed. The corporation asserts in its brief that $21,000.00 was lost by this foreclosure, this being the difference between the value of the land mortgaged and the amount of Springer Concrete's bill. However, there is no evidence that this loss resulted from plaintiff's breach of contract. There is evidence that Springer Concrete's demand for the security that was foreclosed preceded plaintiff's breach of contract. Interest paid on mortgages given to forestall previously unsecured creditors might be recoverable as damages if the forestalling action resulted from the breach. However, there is no testimony as to the amount of any such interest.

(h) Abeyta Transaction—One of the twenty-seven lots was under contract of sale to Mr. Abeyta. Because of plaintiff's failure to release its mortgage on the lot (one on which presumably plaintiff had not advanced money), the corporation could not get a title policy on the lot and Mr. Abeyta lived in one of the corporation's houses for a year, rent free, until the transaction was finished. Assuming the failure to release was a part of plaintiff's breach of contract, the corporation was damaged to the extent of one year's rent. But there is no evidence as to the amount of the rent, nor is there

evidence from which its reasonable value can be determined.

■ (i) Loss of Contractor's License— The corporation ceased doing business after plaintiff's foreclosure suit was filed in May 1963. Thereafter, Mr. Rice formed Lahoma Corporation, which also built houses. Lahoma Corporation ceased doing business because Mr. Rice lost his contractor's license. The license was lost because there were three or more unsatisfied judgments against the corporation. Since the Rice corporation had ceased doing business before the license was lost, any damages resulting from the loss would not be damage to the corporation. The corporation, in contending the loss of a license was a damage to the corporation, says the unsatisfied judgments were the result "of the financial squeeze put on by the Bank and the shutting off of the company's working capital." This contention is not supported by transcript references to evidence, as required by § 21-2-1(15) (6), N.M.S.A.1953.

■ (j) The Tractor and Scraper—A tractor and scraper were valued by Mr. Rice at approximately $20,000.00 although carried on the books at $12,000.00. This equipment was sold by the corporation for $10,096.00, and the proceeds were applied on a note in the amount of $10,546.00, secured by a chattel mortgage on this equipment. The corporation contends that this was a forced sale and directly resulted from the corporation's inability to continue as a going concern. Even if we assume that this was a forced sale, there still is no evidence that loss from the sale resulted from plaintiff's breach of contract.

■ (k) The Audit—There is testimony that plaintiff required an audit by accountants as a condition of continuing to lend money to the corporation. The accountants refused to conduct the audit because of their unpaid bill. Two lots in Alta Monte Subdivision were mortgaged to secure a loan of $5,000.00; the proceeds of the loan were escrowed and were to be used to pay for the audit. This mortgage was foreclosed. The corporation asserts that the equity in the lots was lost by the foreclosure. But the foreclosure resulted from failure to pay the loan. There is no evidence that the failure to pay the loan resulted from plaintiff's failure to loan money on the Del Mar Terrace lots. There is evidence that the audit resulted from plaintiff's breach. The cost of the audit would be recoverable damages. That cost, according to the testimony, is $5,000.00.

■ (1) Comanche Apartments—There is testimony that these apartments were valued at $145,000.00 and were sold for $112,000.00, with the resultant loss of $33,000.00. Mr. Rice testified that the proceeds of the sale were applied on the corporation's debts. There is no evidence that these debts resulted from plaintiff's breach of the lending agreement and there is no evidence these creditors insisted on payment as a result of plaintiff's breach.

■ (m) Attorney Fees in the Foreclosure Suits—These fees were incurred when plaintiff foreclosed on security furnished by the corporation. There is no evidence that these fees resulted from plaintiff's breach of contract.

The evidence relied on supports an award of compensatory damages in the amount of $5,000.00. The verdict and judgment in excess of that amount must be set aside.

Plaintiff contends that the issue of punitive damages should not have been submitted to the jury.

The jury was instructed that if it found the bank liable for actual damages, and if in committing the acts complained of, the officials of the bank were actuated by malice, punitive damages might be awarded. There is no issue presented as to the instruction defining malice, as to whether plaintiff could be liable for malice of its officials or as to the amount of the punitive damages awarded.

There is evidence from which the jury could determine that, in connection with the breach, plaintiff's officials acted maliciously toward the corporation. Plaintiff wanted

the unsecured indebtedness to be secured. Plaintiff's employees were instructed to push this, and to see that all steps taken bound the corporation as well as Rice. However, the unsecured indebtedness was that of Rice and not the indebtedness of the corporation. The contract with the corporation was breached as a part of plaintiff's efforts to obtain security for the unsecured indebtedness and with knowledge that the breach would affect Rice's businesses, including the corporation. Plaintiff refused to release the mortgage on lots of the corporation against which it had not advanced funds, thereby blocking sale of those lots. It brought a foreclosure action against corporation lots in which it did not have an interest and issued notice of lis pendens as to lots in which it had no interest.

There being evidence from which the jury could find malice, the question is whether more than malice is required to support an award of punitive damages for breach of contract.

Plaintiff relies on Whitehead v. Allen, 63 N.M. 63, 313 P.2d 335 (1957), which states:

" * * * [O]rdinarily, punitive damages are not recoverable in an action for breach of contract, * * *. In this state, however, we have recognized the right to an award of punitive damages in an action for breach of contract, if the breach is accompanied by a fraudulent act, wanton in character and maliciously intentional."

Plaintiff asserts that the requirements for punitive damages are in the conjunctive and points out there is no claim here as to fraud or wanton acts.

The corporation asserts that the requirements are in the disjunctive. The rule is stated in the disjunctive in Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940), and Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966). Loucks says:

" * * * Punitive or exemplary damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights."

■■ Punitive damages are awarded as punishment of the offender. See Stewart v. Potter, supra. Such purpose accords with the rule being in the disjunctive. Punitive damages for breach of contract are not limited to wanton and maliciously intentional fraud. Malice is sufficient.

Loucks states:

"Malice as a basis for punitive damages means the intentional doing of a wrongful act without just cause or excuse. This means that the defendant not only intended to do the act which is ascertained to be wrongful, but that he knew it was wrong when he did it."

■ The jury found such malice; the award of punitive damages is affirmed.

The case is remanded. The trial court is to set aside its present judgment and enter a new judgment which (1) awards plaintiff judgment against Earl B. Rice and Lahoma Rice jointly and severally on the promissory notes, in the amount of $64,754.80; (2) awards Earl Rice Construction Company, Inc., judgment against plaintiff on its breach of contract claim, in the amount of $5,000.00 compensatory damages and $50,000.00 punitive damages; and (3) awards judgment in favor of plaintiff on the counterclaim of Earl B. Rice.

The successful parties are to recover their costs in district court. Costs on appeal are to be paid equally by plaintiff, Rice and the corporation.

It is so ordered.

NOBLE and COMPTON, JJ., concur.