477 P.2d 325

Martin T. GALINDO and Delores M. Galindo, his wife, Plaintiffs-Appellees,

v.

WESTERN STATES COLLECTION COMPANY, Inc., and E. M. Stoll and John L. Martin, Defendants-Appellants.

No. 486.

Court of Appeals of New Mexico.

Oct. 30, 1970.

Larry D. Beall, James R. Toulouse, Toulouse, Moore & Walters, Albuquerque, John J. Wilkinson, Alamogordo, for defendants-appellants.

Don Hancock, Alamogordo, for plaintiffs-appellees.

## OPINION

WOOD, Judge.

In this suit for wrongful garnishment, compensatory damages were awarded against all defendants and punitive damages against E. M. Stoll and Western States Collection Company, Inc. (both these defendants are hereinafter referred to as Stoll). The appeal raises issues as to: (1) the liability of Justice of the Peace Martin; (2) the amount of the compensatory damages; (3) liability of Stoll for punitive damages; and (4) the amount of the punitive damages.

Sometime in the spring of 1968 Stoll received, for collection, the account of Mr. and Mrs. Galindo with Aldens of Chicago. Upon being contacted by Stoll, plaintiffs requested " * * * an itemized statement of the account with explanations as to why they owed the account, * * * " This information was not furnished. Instead, on August 9, 1968, Aldens assigned the ac-

count to Stoll. On August 21, 1968, Stoll wrote to plaintiffs threatening suit if the account was not paid immediately.

On September 7, 1968, Stoll brought suit against the plaintiffs in Bernalillo County, New Mexico. Stoll prepared and filed an application for a writ of garnishment. Justice of the Peace Martin prepared a civil summons, a bond which was executed by Stoll, and a writ of garnishment.

The summons was "served" on the Galindos by posting on a bulletin board at the Bernalillo County Courthouse. The writ of garnishment was served at an office of Mr. Galindo's employer in Bernalillo County. As a consequence of service of the writ, Mr. Galindo did not receive two paychecks on the dates they normally would have been received.

When he did not receive his second paycheck, Mr. Galindo inquired of his immediate supervisor and learned on September 26, 1968, for the first time, that his wages had been garnisheed. He consulted an attorney on September 27th. The attorney contacted Stoll on the same date. As a result of this contact, Stoll executed a release of the garnishment on September 27th. The only evidence is that the release was delivered to the Justice of the Peace on the same date. However, Galindo did not receive the two paychecks, dated September 18th and September 26th, until October 4th.

At all material times Stoll knew that plaintiffs were not residents of Bernalillo County, but were residents of Otero County.

*Liability of the Justice of the Peace.*

Our general statute on garnishments, Chapter 26, Article 2, N.M.S.A.1953 (now repealed—see Laws 1969, ch. 139), permitted garnishment before judgment was rendered against the debtor. Section 26–2–35, N.M.S.A.1953 (now repealed—see Laws 1968, ch. 62, § 171), made the article applicable to proceedings in Justice of the Peace courts. However, the jurisdiction of the Justice of the Peace was limited to the county in which he was elected. See § 36–2–8, N.M.S.A.1953 (Repl. Vol. 6)—now repealed. The judgment against Justice of the Peace Martin was based on his knowledge or lack of knowledge concerning his jurisdiction.

The trial court found that Justice of the Peace Martin: (1) wrongfully accepted the case " * * * without knowing whether he had any jurisdiction over the person of the plaintiffs, * * *"; (2) wrongfully accepted the case " * * * without knowing as to whether he had any jurisdiction over the subject matter of the garnishment * * *"; and (3) knew " * * * that the plaintiffs would only be served by posting of the Summons on the bulletin board in the Courthouse in Bernalillo County, New Mexico."

The record fully supports the findings that Martin had no knowledge of any jurisdictional facts giving his court jurisdiction when he accepted the suit and issued the writ of garnishment. The inferences in the record also support the finding that the only "service" on plaintiffs would be posting on a bulletin board at the courthouse in Bernalillo County and that Martin knew it. However, it does not follow that Martin's knowledge and lack of knowledge was wrongful so as to make him liable for wrongful garnishment.

■ We agree with the trial court's comment from the bench that there is nothing showing that jurisdiction was acquired over the Galindos in the Justice of the Peace suit. Since jurisdiction was not acquired over the Galindos by any of the methods authorized in the garnishment statute, the garnishment proceedings, which were ancillary to the suit against the Galindos, were void. Geren v. Lawson, 25 N.M. 415, 184 P. 216 (1919).

■ However, there is nothing in the garnishment statute requiring that jurisdictional facts be known to the court before accepting the suit or before issuing the writ of garnishment. Martin was not required to know that the Galindos would be properly served, pursuant to the statute,

before accepting the suit and issuing the writ. The writ was to issue if proper grounds were stated in the application and a proper bond was supplied. See § 26-2-3, N.M.S.A.1953. Martin is not to be held liable for his lack of knowledge of jurisdictional facts at the time suit was instituted and the writ of garnishment issued.

Of more concern is Martin's knowledge that the only "service" would be the posting at the courthouse. Even if Martin did not know that the Galindos were not residents of Bernalillo County, he did know that the only effort to give the Galindos notice of the suit would be by posting. He is charged with the knowledge that this posting would not be proper service in this suit. Section 26-2-34, N.M.S.A.1953; and generally, § 21-1-1(4), N.M.S.A.1953. This knowledge is not a sufficient basis for holding Martin liable.

■ Judicial officers are not liable for erroneously exercising their judicial powers. They are, however, liable for acting wholly in excess of their jurisdiction. The distinction is between an erroneous exercise of jurisdiction and a usurpation of authority, that is, acting without any jurisdiction. Edwards v. Wiley, 70 N.M. 400, 374 P.2d 284 (1962); Vickrey v. Dunivan, 59 N.M. 90, 279 P.2d 853 (1955); compare Torres v. Glasgow, 80 N.M. 412, 456 P.2d 886 (Ct.App.1969). This rule applies to Justices of the Peace. Edwards v. Wiley, supra.

Here, with knowledge that the Galindos would not be properly served, we assume that Martin acted erroneously in issuing the writ of garnishment. However, he was not acting wholly without subject matter jurisdiction. Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957). Rather, he was acting within his authority in issuing the writ because all requirements for issuing the writ were before him. His knowledge that there would not be service did not make his act "wholly in excess of jurisdiction." An appearance, even without proper service, would have kept the writ of garnishment from being void, and given

Martin authority to render judgment against the Galindos. Edwards v. Wiley, supra.

The trial court's conclusion that Justice of the Peace Martin acted wrongfully in connection with the garnishment proceedings is not supported by the facts found by the trial court. Compare Ryan v. Scoggin, supra; Edwards v. Wiley, supra; State ex rel. Heron v. District Court of First Jud. Dist., etc., 46 N.M. 296, 128 P.2d 454 (1942). The judgment against Martin is reversed.

*Amount of the compensatory damages.*

The trial court awarded compensatory damages, but only in favor of Mr. Galindo. Stoll does not question his liability for compensatory damages in this appeal. He does attack the amount of these damages, which is $525.52. Of this amount, $25.52 is undisputed special damage. Stoll's claim is that $500.00 of the award lacks evidentiary support. The $500.00 amount was awarded for " * * * mental anguish, worry, and embarrassment."

There is evidence that Galindo: was concerned about losing his job as a result of the garnishment; couldn't concentrate and made mistakes at work; had difficulty in eating and sleeping; and was nervous. There is evidence that the store manager was "after" Galindo because he didn't pay his bills.

Galindo had not been concerned about not getting his paycheck due September 18th, attributing the failure to get the check to a mistake. The evidence is that none of the items listed in the preceding paragraph occurred before Galindo learned of the garnishment on September 26th. Since Galindo saw his attorney on September 27th and a release of the garnishment was executed that day, Stoll asserts that Galindo " * * * could have been disturbed about the garnishment *only* on the evening of the 26th. * * *" (Stoll's emphasis). Stoll contends there is no evidence of mental anguish, worry or embarrassment on that evening. Stoll claims

that the $500.00 award is based on Galindo's difficulties with his wife about the alleged unpaid bill with Aldens, and these difficulties occurred prior to his knowledge of the garnishment. These contentions are not based on the record before us.

The record shows that Galindo's concern about the garnishment and the resulting effects began when Galindo learned of the garnishment on September 26th and continued at least until he received the wrongfully garnisheed paychecks on October 4th.

The evidence of a week's concern over possible loss of his job, of having his employer "after" him, of nervousness, of inability to concentrate, and of difficulty in eating and sleeping supports the trial court's award of $500.00 for these items of damage resulting from the wrongful garnishment instituted by Stoll. There is nothing indicating passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages in the award of compensatory damages. See Schrib v. Seidenberg, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969). The award of compensatory damages is affirmed.

*Liability of Stoll for punitive damages.*

(a) Malice as a basis for punitive damages.

An issue under this point is the basis for an award of punitive damages in an action for wrongful garnishment. Relying on Marron v. Barton, 34 N.M. 516, 285 P. 502 (1930), Stoll asserts that for Galindo to obtain an award of punitive damages he was required to prove actual malice and, in addition, prove there was no probable cause for instituting the garnishment proceedings. *Marron,* supra, does not so hold. In that case the trial court found there was no probable cause for an attachment but refused to find that actual malice existed. The trial court awarded compensatory damages. Our Supreme Court affirmed, holding that compensatory damages were recoverable for the wrongful attachment without regard to the existence of either malice or probable cause.

Stoll also cites two Missouri cases and Countryman, Attachment in New Mexico, 1 Nat.R.J. 303 (1961) and 2 Nat.R.J. 75 (1962) in support of his contention that lack of probable cause as well as malice must be shown. Stoll does not indicate what part of Dean Countryman's article supports his contention. Our review of the article did not disclose to us that the article even discussed the issue of punitive damages for a wrongful attachment. The most support for Stoll's contention that we can find in the article is the proposition that out attachment law was taken from Missouri and, therefore, Missouri decisions are pertinent to our decision. Here, however, we are not dealing with the substance of our law of attachment, or garnishment; we are concerned with the basis for an award of punitive damages for a wrongful garnishment.

Punitive damages are awarded as punishment of the offender. Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967); Montoya v. Moore, 77 N.M. 326, 422 P.2d 363 (1967); Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966); Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940); Sweitzer v. Sanchez, 80 N.M. 408, 456 P.2d 882 (Ct. App.1969). This punishment may be imposed because of various types of conduct. Loucks v. Albuquerque National Bank, supra. One type of conduct justifying the punishment which is punitive damages is conduct amounting to malice. Bank of New Mexico v. Rice, supra; Sweitzer v. Sanchez, supra.

Neither reason nor New Mexico authority justifies the contention that in a claim for wrongful garnishment we should depart from the New Mexico decisions and require a showing of lack of probable cause, as well as malice, before punitive damages may be awarded. New Mexico decisions hold that punitive damages may be recovered on the basis of malice; we apply that rule to the wrongful garnishment with which we are here concerned. Accordingly, we do not concern ourselves with the

trial court's finding of no probable cause in filing the garnishment action. The trial court found malice and that finding is a sufficient basis for an award of punitive damages.

(b) Malice defined.

■ Stoll also asserts that to sustain an award of punitive damages, there must be proof of actual malice; that malice implied in law is insufficient. We do not concern ourselves with this asserted distinction since the malice sufficient for an award of punitive damages has been defined. Loucks v. Albuquerque National Bank, supra, states:

> "Malice as a basis for punitive damages means the intentional doing of a wrongful act without just cause or excuse. This means that the defendant not only intended to do the act which is ascertained to be wrongful, but that he knew it was wrong when he did it." (Citations omitted)

Bank of New Mexico v. Rice, supra.

(c) Evidence to sustain a finding of malice.

■ Is there evidence of malice as defined in *Loucks,* supra? It is contended that Stoll knew there were no statutory grounds for obtaining the writ of garnishment and that this knowledge supports the trial court's finding of malice. Stoll swore to four of the grounds stated in § 36-7-1, N.M.S.A.1953 (Repl. Vol. 6), which grounds are made applicable to garnishment proceedings by § 26-2-1, N.M.S.A. 1953. While Stoll's affidavit may be considered a "scattershot" application, nevertheless the undisputed testimony is that Stoll specifically identified the ground on which he applied for the writ to the Justice of the Peace. That ground was for necessities of life. See § 36-7-1, supra. Further, the evidence is undisputed that Stoll believed he had a sufficient basis for this ground when he instituted the garnishment proceedings. There is no basis for an inference that Stoll knew he was doing a wrongful act in identifying "necessities

of life" as the ground on which he instituted the garnishment proceedings. Thus, the ground on which the writ of garnishment was obtained does not support the finding of malice.

It is also contended that the method of "service" supports the finding of malice. We agree. Stoll's practice in instituting suits before Justice of the Peace Martin was to tell the Justice of the Peace where the defendants in the Justice of the Peace suit lived. Stoll could not remember whether he followed that practice in this case and could not remember whether he told the Justice of the Peace, of the fact undisputedly known to him, that the Galindos lived in Otero County. The Justice of the Peace testified that Stoll did not give him an address for the Galindos; that he assumed Stoll had an address; that he gave the suit papers to a deputy sheriff for service. Both Stoll and the Justice of the Peace testified as to the "common practice" of issuing summons to out of county defendants and "serving" them by posting the summons on a bulletin board in the Bernalillo County Courthouse. This was what was done in this case. This evidence supports the finding that Stoll knew the only "service" on the Galindos would be by posting on the courthouse bulletin board. This supports an inference that Stoll intentionally did a wrongful act; the act was in instituting a suit knowing the Galindos would not be given notice of the suit.

It is contended, however, that Stoll did not know the act was wrong. In support of this contention, it is pointed out that all Stoll was doing was following a "common practice" and that in fact no judgment was rendered against the Galindos in the Justice Court suit. However, there is evidence that Stoll had an extensive collection business, both in length of time and volume. Stoll's experience, the fact that Stoll did not disclose his knowledge of the whereabouts of the Galindos, and the fact of the form of "service" permits the inference that Stoll knew he was proceeding wrongfully. With this permissible inference we

cannot say as a matter of law that the trial court's finding of malice, which justifies an award of punitive damages, was wrong.

(d) Conduct that is reckless and in wanton disregard of plaintiffs' rights.

■ We have previously pointed out that Loucks v. Albuquerque National Bank, supra, authorizes the imposition of punitive damages for various types of conduct. One of the types of conduct authorizing such an award is conduct which may be said to have been " * * * committed recklessly or with a wanton disregard of the plaintiffs' rights. * * * " The trial court concluded that Stoll's actions " * * * showed a reckless and wanton disregard of the plaintiffs' rights." If there are findings to support this conclusion, then Stoll's liability for punitive damages is sustainable on this basis alone, regardless of the finding of malice.

The trial court found that Stoll knew the Galindos lived in Otero County and would be "served" only by posting of the summons on a bulletin board in the Bernalillo County Courthouse. The trial court also found that no service was ever made upon the plaintiffs. The result of these findings is that Stoll knowingly garnisheed the paychecks in a proceeding of which the Galindos had no notice and would not receive notice because of the form of "service." The findings support the trial court's conclusion that Stoll proceeded recklessly and with a wanton disregard of the rights of the plaintiffs.

Thus, there are two grounds for holding Stoll liable to Mr. Galindo for punitive damages—his malice and his conduct which was reckless and in wanton disregard of the rights of Mr. Galindo. Either basis would sustain Stoll's liability; here, both grounds sustain his liability.

*The amount of the punitive damages.*

■ The trial court awarded punitive damages of $5000.00. The rule is that the amount of punitive damages is left to the discretion of the fact finder, " * * * but must not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason and justice. * * * " Faubion v. Tucker, 58 N.M. 303, 270 P.2d 713 (1954); see Sweitzer v. Sanchez, supra.

Stoll contends the amount of the punitive damages is so unrelated to the injury and and the compensatory damages as to plainly manifest passion and prejudice. However, he argues this point on the basis that only $25.52 of compensatory damages were proven. We have affirmed the compensatory damage award of $525.52. The question is whether the $5000.00 punitive damages is so unrelated to wrongful garnishment and the $525.52 compensatory damages as to plainly manifest passion and prejudice.

■ In answering this question we consider the circumstances of the case—the nature of the wrong committed and such aggravating circumstances as are shown. Sweitzer v. Sanchez, supra. The nature of the wrong—the wrongful garnishment is established by Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969). The wrong is the intentional deprivation of due process; in this case it is intentionally depriving the wage earner of his wages without due process. Yet, there are little, if any, aggravating circumstances. When the error was pointed out to Stoll, he immediately caused the garnishment to be released. Nevertheless, punitive damages are for purposes of punishment and on the record before us the trial court could properly, in its discretion, impose a punishment.

■ Considering the relationship of the punitive damage award to the offense and the amount of the compensatory damages in the light of the foregoing circumstances, the amount of the punitive damages plainly manifests passion and prejudice. But to what extent? In our judgment the award is excessive by half. We hold that $2500.00 of the punitive damages is erroneous. We conclude that if Martin T. Galindo will,

within twenty days, file a remittitur with the Clerk of this Court in the sum of $2500.00 from the $5000.00 judgment for punitive damages the judgment for punitive damages will be affirmed in the amount of $2500.00. Otherwise, the judgment as to punitive damages will be reversed and remanded for a new trial on the issue of punitive damages only.

The judgment as against John L. Martin is reversed with instructions that the claim as against him be dismissed.

The judgment for compensatory damages as against Western States Collection Company, Inc., and E. M. Stoll, jointly and severally, in the sum of $525.52, is affirmed.

It is so ordered.

SPIESS, C. J., and OMAN, J., concur.