John H. LULL and Herbert Millay, d/b/a
**The Crowning Touch, Appellants,**

v.

**WICK CONSTRUCTION COMPANY,**
Appellee.

No. 4030.

Supreme Court of Alaska.

July 25, 1980.

---

Peter M. Page, Juneau, for appellants.

Michael M. Holmes, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from complex litigation involving the construction of the Juneau Courthouse. In July 1973, John Lull and Herbert Millay, d/b/a The Crowning Touch, a plastering and drywall firm, entered into an agreement with Wick Construction Company ("Wick"), the general contractor for the courthouse project, to do fireproofing, plastering, lathing, and related work on the courthouse. The Crowning Touch began fireproofing in May, 1974, but soon had a dispute with Wick concerning the amount of material required. The state building inspector required thicker fireproofing than Wick had anticipated, and The Crowning Touch had based its bid for the job on the quantity estimated by Wick. When The Crowning Touch had sprayed the 77,000 feet of fireproofing specified in the agreement, it ceased spraying, even though some of the building had not been fireproofed. The fireproofing work had also fallen behind schedule because, according to The Crowning Touch, Wick had failed to provide suitable work areas and conditions as provided by contract.

On July 3, 1974, Walt Lamb, the Wick project manager, wrote The Crowning Touch to inform it that Wick was taking over the subcontract, due to The Crowning Touch's nonperformance. Copies of this letter were sent to the B.M. Behrends Bank, the source of The Crowning Touch's financial support for the project and the assignee of its subcontract with Wick, and to Dawson and Co., The Crowning Touch's bonding company. Oral communications between agents of Wick, the bank and the bonding company concerning The Crowning Touch's performance also took place. Following negotiations, Wick revoked the letter, conditioned on The Crowning Touch's immediate recommencement and timely completion of the work. On August 24, however, Wick apparently did take over the job.

Subsequent to these communications, further advances to The Crowning Touch by the B.M. Behrends Bank were denied. The Crowning Touch's agreement with the bank specified that Wick would forward the proceeds due The Crowning Touch directly to the bank. At some point after work began, Wick erroneously sent a large check directly to The Crowning Touch, rather than to the bank. The Crowning Touch apparently diverted these funds to another job on which it was working. According to one officer of the bank, this diversion was a major reason for cutting off The Crowning Touch's line of credit.

During the same period of time, The Crowning Touch's bonding company, Dawson and Co., decided to deny further bonding to The Crowning Touch for other projects. Lull testified that Dawson appeared willing to further bond them as soon as Wick released them from the courthouse fireproofing project. Both William Baker, manager of Dawson's Juneau office, and Mike Miller, a Dawson employee, observed that it became more difficult for anyone to get bonding from any company in the summer of 1974 because of a general tightening of the bonding market. Miller expressed his belief that no communication from Wick caused the denial of further bonding to The Crowning Touch.

The Crowning Touch sued Wick, alleging breach of Wick's subcontract with The Crowning Touch, defamation and tortious interference with contract. The complaint sought punitive as well as compensatory damages. Prior to trial, Wick moved for summary judgment as to The Crowning Touch's defamation claims and for dismissal of its other tort claims and its claim for punitive damages. The superior court, treating the motion to dismiss as a motion for summary judgment, granted Wick's motions based on the contents of numerous depositions taken by both sides. The matter then proceeded to trial on The Crowning Touch's contract claims, with The Crowning Touch prevailing.

After the trial, The Crowning Touch moved for relief from judgment and a new trial on the grounds that the superior court had not had a key deposition before it when it considered Wick's motions for summary judgment, because of the oversight of a court reporting service. The superior court ordered that the deposition be incorporated into the record, but denied The Crowning Touch's requested relief. The Crowning Touch now appeals the summary judgment granted to Wick on the tort and punitive damages claims.

We affirm the superior court's grant of summary judgment to Wick. In reaching our decision, we have examined the depositions and exhibits that were before the superior court at the time of the summary judgment motions,[1] and have concluded that Wick, as movant, did meet its burden under Alaska Civil Rule 56(c) of establishing the absence of any disputed issue of material fact.[2]

The Crowning Touch alleged defamation by Wick on the basis of the letter and oral statements communicated by agents of Wick to The Crowning Touch's financing bank and its bonding insurer, indicating dissatisfaction with the performance of The Crowning Touch under its contract.[3] The

---

1. We have reviewed the missing deposition as well, but our decision would be the same irrespective of that evidence.

2. Alaska R.Civ.P. 56(c) reads in pertinent part: Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

3. The letter, copies of which Wick sent to The Crowning Touch's bank and bonding company, reads:

July 3, 1974

The Crowning Touch
RR # 5 Box 5239–B
Juneau, Alaska 99801

Re:  Juneau Court Building
     Project No. DBA 2–0085
     Contract No. P–654

Gentlemen:

Reference is made to the subcontract between Wick Construction Company, the Contractor, and The Crowning Touch, the Subcontractor, in the amount of $37,600.00 for all plastering work. In accordance with the provisions of Article K, you are hereby notified that Wick Construction Company will take over this subcontract on July 8, 1974. The work will be completed by Wick at the expense of The Crowning Touch. Any overrun will be recovered from The Crowning Touch or their bonding company, and any underrun will accrue to The Crowning Touch.

The reason for the above action is non-performance and failure to complete any phase on the part of the subcontractor. In particular, the subcontractor has refused to proceed with the fireproofing despite repeated urgings and

superior court granted summary judgment to Wick on this claim based on a conclusion that no one at the bank or bonding company viewed Wick's information as "anything out of the ordinary," and that the statements were privileged because of Wick's business relationship with the bank and bonding company.

■ The superior court's ruling that Wick's communications to the bank and bonding company fell within the scope of privilege based on a joint business interest and, thus, were protected from defamatory suit was correct in our opinion. Section 596 of the Restatement (Second) of Torts (1977) provides:

An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Here, Wick could reasonably have believed that the bank was entitled to know that Wick considered The Crowning Touch to be in default of its contract, since the bank's loan to The Crowning Touch was secured by an assignment of the contract payments which Wick owed The Crowning Touch for performance of the subcontract. Likewise, since the performance bond insuring The Crowning Touch's performance under the subcontract ran in Wick's favor, Wick could reasonably have thought the bonding company should be informed of Wick's dissatisfaction with The Crowning Touch's performance. Courts in other jurisdictions have consistently found a privilege in comparable business relationships.[4]

■ The privilege is conditional. It is well established that such a privilege is no defense if the defamatory communication is published with express or implied malice—if the perpetrator knows it to be false or acts in reckless disregard of the truth or falsity of the matter. Restatement (Second) of Torts § 600 (1977).[5]

However, the evidence before the superior court in this case reveals no indication that the communications from Wick to the bank and bonding company were made with malice. The various recipients of these communications testified that they did not consider the communications themselves to be defamatory in character, but rather to

---

pleadings on our part over the past six or more weeks. In addition, he has removed his crew and equipment from the project.
> Very truly yours,
> WICK CONSTRUCTION COMPANY
>
> L. W. Lamb
> Project Manager
> LWL/edm
> CC: Behrends Bank, Mr. John Holmquist
> Dawson & Co., Juneau, Mr. Bill Baker
> Wick Construction, Juneau

4. Cf. *Gantry Const. Co. v. American Pipe and Const.*, 49 Cal.App.3d 186, 122 Cal.Rptr. 834 (1975) (seller's statement to buyer's indemnity insurer concerning buyer's default); *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974) (statements by creditor to another creditor of plaintiff); *Gallagher v. Albert Woodley Co.*, 35 A.D.2d 713, 315 N.Y.S.2d 99 (1970) (letters from employer to surety on employer's fidelity bond, alleging embezzlement against employee covered by the bond); *West v. Peoples Banking & Trust Co.*, 14 Ohio App.2d 69, 236 N.E.2d 679 (1967) (banker's statement to commercial borrower, also depositor in bank, that bank would not make loan if borrower employed plaintiff).

5. Restatement (Second) of Torts § 600 (1977) states in pertinent part:
> [O]ne who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity.

See W. Prosser, Law of Torts § 115, 794–95 (4th ed. 1971); *Roscoe v. Schoolitz*, 105 Ariz. 310, 464 P.2d 333, 337 (1970); *Gantry Const. Co. v. American Pipe and Const. Co.*, 49 Cal. App.3d 186, 122 Cal.Rptr. 834, 840 (1975); *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102, 1113 (1974); *Schulze v. Coykendall*, 218 Kan. 653, 545 P.2d 392, 398–99 (1976); *Gallagher v. Albert Woodley Co., Inc.*, 35 A.D.2d 713, 315 N.Y.S.2d 99, 100 (1970); *West v. Peoples Banking & Trust Co.*, 14 Ohio App.2d 69, 236 N.E.2d 679, 681 (1967); *Wattenburg v. United Medical Laboratories, Inc.*, 269 Or. 377, 525 P.2d 113, 116 (1974). *Accord, Fairbanks Publishing Co. v. Francisco*, 390 P.2d 784, 793 (Alaska 1964).

be limited to comments that the work was behind schedule and complaints about the quality of the work. The letter, copies of which Wick sent to the bank and bonding company, did not go beyond stating that Wick was taking over the contract because of nonperformance by The Crowning Touch, and listing the particular instances of non-performance of which Wick accused The Crowning Touch.[6] The comments by employees of Wick, which The Crowning Touch offered as evidence of malicious intent, occurred in circumstances unrelated to the communications to the bank and bonding company or to any other actions by Wick.[7] The evidence reveals no knowledge by Wick's agents at the time the statements to the bank and bonding company were made that they knew the statements were false; nor does the evidence indicate that the statements were made in disregard of their veracity. Even drawing all reasonable inferences in favor of The Crowning Touch, the evidence does not establish any triable issue of fact regarding malice on the part of Wick in tendering communications to the bank and bonding company which concerned their common business interests. Therefore, summary judgment on this issue was appropriate.[8]

■ The Crowning Touch also argues that punitive damages should be awarded for malicious conduct by Wick in breaching its contract with The Crowning Touch.[9] This court has indicated in past dicta that punitive damages may not lie in contract actions,[10] but has noted that some states permit punitive damages when the breach is "malicious or grossly reckless" or when the conduct associated with the breach also constitutes an independent tort.[11] Not one

---

6. See note 4, supra.

7. Shortly after The Crowning Touch began work on the courthouse project, Greg Falskow of Wick had an argument with Lull and Millay regarding working on Saturday and cleaning up items oversprayed with fireproofing. According to Lull, Falskow said, in parting, "Remember who holds the purse strings on this job," to reinforce his statement that The Crowning Touch should clean up.

Irvin Tyson of The Crowning Touch testified that, after another argument with employees of The Crowning Touch over construction materials being in the way of the fireproof spraying, he overheard Larry Brandt of Wick state to an unknown person: "Damn'd subcontractors, The Crowning Touch, I don't think they realize, but I've broke more subcontractors than they have ever seen."

8. As we recently stated in Totem Marine Tug & Barge v. Alyeska Pipeline Serv. Co., 584 P.2d 15, 24 (Alaska 1978) (citations omitted):

To avoid summary judgment once the moving party meets its burden, the non-moving party must produce competent evidence showing that there are issues of material fact to be tried. The respondent must set forth specific facts showing that it could produce admissible evidence reasonably tending to dispute the movant's evidence or establish an affirmative defense. The court then must draw all reasonable inferences in favor of the non-moving party and against the movant.

9. The Crowning Touch argues as well that Wick is guilty of "prima facie tort" even if no specific tort against The Crowning Touch can be established. Since The Crowning Touch has only briefed this issue in a cursory manner, we consider it abandoned and decline to address it. Alaska R.App.P. 11(b)(1)[g]; Kristich v. State, 550 P.2d 796, 804 (Alaska 1976).

10. See Skagway City School Bd. v. Davis, 543 P.2d 218, 225 (Alaska 1975) ("The recovery in this case could not be based upon a theory of tort liability. The record does not contain evidence of malice, . . ."); Alaska Placer Co. v. Lee, 553 P.2d 54, 61 (Alaska 1976) (punitive damages are "not favored in law" and "are to be allowed only with caution and within narrow limits"). In International Bhd. of Teamsters, Local 959 v. King, 572 P.2d 1168, 1177 (Alaska 1977) this court followed the "well established rule against allowance of punitive damages for breach of labor contracts" under federal law and noted the general rule against punitive damages in all breach of contract actions:

Restatement of Contracts § 342 (1932), and 5 Corbin, Contracts § 1077 (1964), say flatly that punitive damages may not be awarded for breach of contract. This is a corollary of the Hadley v. Baxendale rule that only reasonably foreseeable damages may be awarded for breach of contract. It also permits zealous advocacy of contract interpretations that are subject to reasonable dispute, without fear of punitive damages for an erroneous interpretation.

572 P.2d at 1176 (footnotes and citations omitted).

11. International Bhd. of Teamsters, Local 959 v. King, 572 P.2d 1168, 1176–77 n.31 (Alaska 1977). See, e. g., Singleton v. Foreman, 435

of the breaches of contract alleged by The Crowning Touch is tortious in character, however.[12] Nor has The Crowning Touch tied any evidence of malicious intent by Wick to its conduct in breaching its contract with The Crowning Touch. The random comments of Wick's representatives cited by The Crowning Touch as evidence of Wick's malice are not sufficient in our opinion to raise a genuine question of fact regarding Wick's general intent in refusing to carry out its contract according to the interpretation favored by The Crowning Touch and eventually held valid in court.[13] Thus, in our opinion, The Crowning Touch in this case would not avoid summary judgment on the question of punitive damages even in jurisdictions where punitive damages are allowed for malicious or tortious breaches of contract. As such, we need not decide whether punitive damages should be awarded in such cases in Alaska.

The judgment of the superior court is Affirmed.

F.2d 962, 971 (5th Cir. 1970); *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551, 557 (1969); *Gonzalez v. Allstate Ins. Co.*, 217 Kan. 262, 535 P.2d 919, 922 (1975); *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368, 378 (1967).

12. The offending conduct of Wick is summarized in The Crowning Touch's brief to include 1) refusal to negotiate a change order under the contract when Wick wanted The Crowning Touch to continue fireproofing beyond the amount of material specified in the contract; 2) demanding that The Crowning Touch spray plaster on the building "core" despite knowing that the "core" had been rejected as unready by the state inspector; and 3) refusing to pay The Crowning Touch's drywall crew, after agreeing to do so and allowing them to work for two weeks.

13. *Compare Loucks v. Albuquerque Nat'l Bank*, 76 N.M. 735, 418 P.2d 191, 199 (1966) (representative of a bank made "an intemperate remark or two" and ran the depositor out of the bank "more or less," when the depositor came in the bank to discuss the bank's incorrect claim that depositor's account was overdrawn; held insufficient to take to jury for claim of punitive damages) *with Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368, 378 (1967) (bank, after making unsecured loans to Rice and then failing to obtain security, brought a foreclosure action and filed notice of *lis pendens* as to lots of Rice in which the bank had no claim of interest; held sufficient evidence of malicious breach to justify punitive damages) *and Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551, 557 (1969) (car dealership admitted to grossly misrepresenting the amount of mileage on demonstrator car in a sale, by turning back odometer; held sufficient evidence of willful fraud to support punitive damages award by jury).